GRAVES, respondent, *v*. NORTHERN PACIFIC R. R. CO., appellant.

CONSTITUTIONAL LAW — *Right to jury trial — Denial of.*— A law rendering a railroad company liable for cattle killed by it, at a value to be determined by appraisement, which appraisement is made conclusive evidence of such value, is unconstitutional, as depriving the company of the right of trial by jury

*Appeal from Third District, Meagher County.*

SANDERS & CULLEN, for appellants.

The statute of Montana under which plaintiff brings action against the railroad company is unconstitutional and void, because: 1. It is incompetent for territorial legislature, a creature of congress, to attach conditions, limitations and restrictions upon a corporation chartered by congress. 2. Said statute seeks to clothe with judicial powers a tribunal unknown to the organic act of the territory. 3. It is in violation of that provision of the constitution which secures every person from being deprived of property without due process of law. 4. It is in violation of that provision of the constitution which guaranties to every one the right of trial by jury.

The statutes in question make railroad companies responsible in damages without regard to negligence, and provide for the assessment of damages, not in any court known to the organic act, but by appraisers, whose findings are made conclusive in the premises. 20 Ky. 463; 58 Ala. 594.

ROBINSON & STAPLETON, for respondent as *amici curiæ.*

The law may be sustained as a proper exercise of the police power inherent in every legislative body, without holding that the method of ascertaining the value of property destroyed was constitutional.    24 Cal. 518.

The subject-matter of the law is a rightful subject of legislation.    The act contravenes no provision of the railroad charter.

Other states have passed similar laws which have been held constitutional.    41 Iowa, 297; 27 Vt. 140; 16 Kan. 573; 18 Kan. 462; 19 Kan. 529; Pierce on Railroads, 464, · 465; Redfield on Railways, 460–61; Cooley on Con. Lim. 710; 45 Wis. 222.

As to the question of due process of law, see Cooley on Const. Lim. (5th ed.) 434.

GALBRAITH, J.   This action was originally brought in the justice court of Meagher county.   The facts were as follows, viz.: The complaint — after alleging in substance that the appellant is now, and was at the time of the injury complained of, a corporation organized under the laws of the United States, and the owner of a certain railroad running through the territory of Montana and a portion of Meagher county, in said territory; and that the respondent was the owner of a certain mare, of the value of $160, running in an inclosure adjoining the track and ground occupied by the railroad of the appellant, in the county of Meagher; and that on or about the 7th day of October, 1883, without the fault or neglect of the respondent, the said mare strayed upon the ground occupied by the railroad of the appellant; and that the appellant, at the time and place above stated, so carelessly and negligently run its locomotives and cars that the same ran over the mare and killed her, to the damage of the respondent in the sum of $160 — contains the following averment:

"That heretofore, to wit, on the 12th day of October,

1883, at the said county of Meagher, and before the bringing of this action, under and by virtue of an act passed by the legislature of the territory of Montana, approved February 23, 1881, entitled ' An act to provide for the payment of stock killed or injured by railroads,' and an act amendatory thereto, approved March 2, 1883, this plaintiff, having made and filed the necessary affidavits, and having duly served notice upon said defendant, and the necessary appraisers having been appointed to appraise the value of said mare, which valuation was duly assessed and returned by said appraisers to said defendant, fixing the value of said mare at the said sum of $160, has complied with the provisions of the aforesaid act, and the amendment thereto; that since the due return of the aforesaid appraisers more than thirty days have elapsed before the bringing of this action, and the said defendant has not paid the said sum of $160, or any part or portion thereof."

The answer was in substance as follows: It denies that the respondent was the owner of the mare, or that she was of any greater value than $80, or that it was through the negligence of the appellant that she was killed, or that she strayed upon the railroad without the fault of the respondent. It affirmatively alleges that the animal was killed through the fault and negligence of the respondent in permitting it to depasture in a field through which the appellant's railroad runs, which was not fenced, so as to prevent it from straying upon the track; and that it was while the appellant was carefully operating its road, and running locomotives and cars thereon, as it might lawfully do, that the animal strayed upon the track of the appellant, and in consequence thereof, and without the fault or negligence of appellant, was accidentally run over and killed.

The replication denied that the animal was killed through any negligence of the respondent. It admits that the inclosure was not fenced at the railroad, and

that the animal strayed from such inclosure upon the track. It avers that said mare was rightfully pastured there, and strayed upon the track without any fault, omission or neglect of the respondent, and was killed and destroyed through the want of care and negligence of said defendant . . . in the operating and management of its said locomotive and cars, and that the mare was of the full value of $160, as alleged in the complaint.

Judgment was rendered in the justice court against the appellant, and in favor of the respondent, for the sum claimed in the complaint and the costs of suit. From that judgment there was an appeal to the district court, which, upon motion of the respondent for judgment on the pleadings for the sum claimed in the complaint, rendered judgment for said sum, with costs. From that judgment there is this appeal.

The questions presented relate to the validity of the act of the legislature mentioned in the complaint. The provisions of this law, necessary to be stated, are as follows: The first section of this act makes railroad companies operating any railroad in the territory liable for damages for damaging or killing any domestic animal by running its engines or cars over or against said animal. Section second was amended so as to read as follows:

"If the owner of the animal or animals so killed, or his or her authorized agent, shall make affidavit before some officer authorized to administer oaths, that he or she was the owner or authorized agent of the owner of the recorded brand found upon the animal or animals so damaged or killed at the time of such killing or damaging, and such person shall, within six months after such killing or damaging, deliver such affidavit to the agent or an officer of such company or corporation, or shall make affidavit that the animal damaged or killed as aforesaid had no recorded mark or brands, and that he or she is the owner of such animal, describing it; and

the corporation or company shall pay to such person delivering such affidavit, or such affidavit last as aforesaid, as follows: Schedule: Yearlings, each $23; two year old, each $27; cows, three years old and over, each $30; steers (unbroken), three years old and over, each $45; steers (work cattle), each $50; sheep, each $3; milch cows, thoroughbred and graded cattle and sheep shall be paid for at their cash value. Provided, that no railroad company shall, at any time, be required to pay more than the market value of any animal killed or damaged. In all cases where such railroad company or corporation shall kill any of the stock mentioned in this act, and for which no price or sum is fixed, the owner or agent of such stock shall, after the filing of such affidavit of ownership as aforesaid, select some disinterested freeholder of the county where such killing took place, and shall notify such company or corporation of such selection; and such company or corporation shall, within three days thereafter, select some suitable person to act with the person so selected, and the two so selected shall select a third, and the three so selected shall, without delay, proceed to appraise the value of the stock so killed, a majority of which three appraisers shall be sufficient to determine the same, and shall certify under oath such appraisement to an agent of such company or corporation. In case such railroad company or corporation shall refuse or neglect to appoint such appraiser, it shall be the duty of the justice of the peace nearest to the place in the county where the stock is so killed, to select one disinterested person as appraiser, and to administer to him an oath to honestly appraise the value of such stock, which appraiser shall, without delay, proceed to act in conjunction with the person selected by the owner, and they shall at once proceed as hereinbefore provided for them as appraisers; and such railroad or corporation shall, within thirty days after the receipt of certificate, pay to the owner of such stock so killed, or his or her agent,

the amount of such appraisement, together with all the costs as aforesaid; and in all cases where the value of such stock .is established by this act, such company or corporation shall pay for such stock within thirty days after the delivery of the affidavit of ownership of stock as hereinbefore provided; and if said company or corporation shall fail to pay for said stock within the time as hereinbefore provided, the owner of such stock may commence proceedings in any court of competent jurisdiction for the amount found to be due and owing for such stock so injured or killed; and the findings of such appraisers shall be taken and held to be conclusive evidence of the value and ownership of, and the injury to, such stock, and the court shall add and tax as costs in the action, the costs of the proceedings upon the appraisement hereinbefore specified."

It will be observed that the animal alleged to be killed in this case did not belong to any of the classes set forth in the above schedule. Also, that the pleadings show that, before the commencement of the action, the respondent had complied with the provisions of the above law relative to the appointment of appraisers; and that said appraisers had assessed the value of the animal alleged to be killed, and fixed the value thereof at $160. The section of the law under which the appraisers were appointed provides that "the findings of such appraisers shall be taken and held to be conclusive evidence of the value and ownership of, and injury to, such stock." The court in rendering judgment upon the pleadings must have done so in pursuance of this law, for the value of the animal alleged in the complaint was denied in the answer. The law prevents the railroad company from exercising its right of appeal from the findings of the appraisers; thus depriving it of the right of trial by jury. This provision of the law in relation to the appointment of appraisers is not in accordance with the constitution and laws of the United States, and is, therefore, invalid.

Their act, therefore, in fixing the value of the animal killed was unauthorized. That the law was invalid in this respect is virtually admitted in the argument for the respondent. This is sufficient for the disposal of this case, and renders ι nnϿcessary the consideration of the other question presented, viz., the making of railroad companies liable for stock they may kill, irrespective of negligence.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*Judgment reversed.*