## TAYLOR v. ANDERSON *et al.*

No. 5671.    Opinion Filed January 13, 1914.

(137 Pac. 1183.)

CONSTITUTIONAL LAW—Weights and Measures—Due Process—Conclusiveness of Weights. Act approved March 7, 1913 (Sess. Laws 1913, c. 24, p. 41), providing that, where lists of baled cotton are purchased from local buyers and stored in cotton yards owned and operated by cotton weighers, they shall reweigh the same before it is removed from their yards; that the purchasers may be present, and (section 4) "when any cotton shall be reweighed in their presence they shall accept the weights as being correct and make final settlement on the same;" and (section 5) that when the same is reweighed according to the provision of said act "the transaction between the buyer and seller as to weights, shall be at an end and neither party shall have any recourse on the other"—held to be a legislative attempt to make conclusive, between the parties to a sale, the finding of the fact of the weight of the cotton by the weigher, and hence is unconstitutional as denying the buyer or seller, when sued by the other, due process of law.

(Syllabus by the Court.)

*Error from District Court, Cleveland County;*
*R. McMillan, Judge.*

Action by F. E. Anderson and others against J. F. Taylor. Judgment for plaintiffs, and defendant brings error. Affirmed.

*Ralph C. Hardie,* for plaintiff in error.

*Burwell, Crockett & Johnson,* for defendants in error.

TURNER, J. On October 8, 1913, defendants in error brought suit in the district court of Cleveland. county against J. F. Taylor, plaintiff in error, the object of which is to test the constitutionality of an Act approved March 7, 1913. (Senate Bill

No. 77, c. 24, Sess. Laws 1913, p. 41). The petition substantially states that one of the plaintiffs, Wm. Morgan, Jr., is a local cotton dealer at Norman and, as such, had, together with other cotton owned by him, twenty bales of cotton stored in the cotton yard operated by defendant at that place; that his coplaintiff, Anderson, Clayton & Co., of Oklahoma City, are dealers in cotton which they buy from local dealers for resale and export; that said Morgan as the owner of the twenty bales aforesaid theretofore sold the same to said Anderson, Clayton & Co., and agreed to deliver the same to them f. o. b. Norman, with weights guaranteed at the compress at Oklahoma City; that said Taylor, whose yard is the only one in Norman, refused and still refuses to surrender possession of said twenty bales of cotton to plaintiffs on demand and refuses to permit them to remove the same except after the same are reweighed and ten cents per bale paid him therefor as weigher, which plaintiffs refused to pay; that defendant threatens to and will reweigh not only that but all cotton belonging to plaintiffs which may be stored in his said yard from time to time and will claim and charge such fee for reweighing and will not deliver said cotton except upon the payment of the fee aforesaid. It is further charged that defendant is so doing pursuant to said act, which is alleged to be unconstitutional for certain reasons set forth in the petition. The prayer is that the defendant be enjoined from so doing and for general relief. After answer filed, in effect a general admission and a plea of justification under the act, there was judgment for plaintiffs upon the pleadings, the act was declared unconstitutional, the injunction granted as prayed, and defendant brings the case here.

The act assailed is entitled:

"An act to require the reweighing of baled cotton before removing same from any local cotton yard and fixing the penalty for the violation thereof."

It provides:

"Section 1. Every person, firm or corporation in the state of Oklahoma, engaged in the business of cotton buying, where lists of baled cotton are purchased from local buyers, and the said cotton stored in cotton yards or cotton warehouses owned or

operated by cotton weighers, shall, before removing same, have said cotton reweighed.

"Sec. 2. Every owner or operator of a cotton yard or warehouse in the state of Oklahoma, shall be required, before allowing any cotton to be removed from his yard, or warehouse, to reweigh same in the presence of the owner or purchaser, or some agent of said purchaser, or owner of same; and, with indelible ink, mark on the bale, in figures, the weight of the bale."

Section 3 provides for testing the scales and a second weighing.

"Sec. 4. Persons, firms, or corporations engaged in the cotton business, coming under the provisions of this act, shall have the right to be present at the reweighing of any cotton they may purchase or desire to purchase, and when any cotton shall be reweighed in their presence they shall accept the weights as being correct and make final settlement on the same.

"Sec. 5. When a list of cotton has been reweighed before leaving the cotton yard, according to the provisions of this act, the transaction between the buyer and seller as to the weights, shall be at an end and neither party shall have any recourse on the other."

Section 6 provides the penalty for a violation of the act. Which means (section 1) that when Morgan bought this cotton and had it stored in this yard, before he can deliver it to the purchasers, his coplaintiffs, he must have it reweighed by the weighmaster of the yard. Not only that, but section 2 makes it the duty of the weighmaster to reweigh it, before it is removed, in the presence of one of the contracting parties or his agent, and to mark the weight of the bale thereon. After section 3 makes provision for any person in interest not satisfied with the weights to require a reweighing, section 4 provides that the purchasers may be present at the reweighing, and that when they are, and the cotton is reweighed in their presence, "they shall accept the weights as being correct and make final settlement on the same." Not only that, but whether the purchaser is present or not, section 5 provides that, when the cotton is reweighed as provided, "the transaction between the buyer and seller as to weights, shall be at an end and neither party shall have any recourse on the other." Which means that such finding of the weights by the weigher is conclusive as to that fact, and should either buyer

or seller sue the other and base his claim on over or under weights resulting from fraud, accident, mistake or anything else, the other has the right to plead the weights, as found by the weighmaster, in bar of the action, and the same will be conclusive evidence of the weight of the cotton. Whether the act is an attempt to confer upon the weighmaster the exercise of judicial power, or denies to either party to the sale the equal protection of the law, or whether it interferes with plaintiffs' right to contract, or whether it constitutes a taking of private property for private use (and it seems to be open to objection on any of these grounds), and for any of the reasons stated is unconstitutional, we need not say, for true it is, it was beyond the power of the Legislature to make the finding of the weighmaster conclusive evidence of that fact, and hence the act must fall, as denying to the party sued, whether buyer or seller, due process of law.

Cooley's Const. Lim. (7th Ed.) p. 526, says:

" * * * Except in those cases which fall within the familiar doctrine of estoppel at common law, or other cases resting upon like reasons, it would not, we apprehend, be in the power of the Legislature to declare that a particular item of evidence should preclude a party from establishing his rights in opposition to it. In judicial investigations the law of the land requires an opportunity for trial; and there can be no trial if only one party is suffered to produce his proofs. The most formal conveyance may be a fraud or forgery; public officers may connive with rogues to rob the citizen of his property; witnesses may testify or officers certify falsely, and records may be collusively manufactured for dishonest purposes; and that legislation which would preclude the fraud or wrong being shown, and deprive the party wronged of all remedy, has no justification in the principles of natural justice or of constitutional law"
—citing Blackwell on Tax Titles, p. 100 *et seq.*

In *McCready v. Sexton & Son,* 29 Iowa, 356, 4 Am. Rep. 214, the court said:

"*Wantlan v. White,* 19 Ind. 470, which was a proceeding by *habeas corpus* in behalf of an enlisted minor, who had taken the usual oath of his age. His discharge was resisted on the ground that the act of congress provided that 'the oath of enlistment taken by the recruit shall be conclusive as to his age.' The

court held 'that it is not competent for the legislative power to declare what shall be conclusive evidence of a fact.' * * * In *Groesbeck v. Seeley,* 13 Mich. 329, *Quinlon v. Rogers,* 12 Mich. 169, and *Case v. Dean et al.,* 16 Mich. 12, a statute making the tax deeds conclusive evidence of title was held absolutely void, as being in conflict with the constitutional provision guaranteeing due process of law for the protection of life, liberty, and property."

In *Wilson v. Wood et al.,* 10 Okla. 279, 61 Pac. 1045, the court, in the syllabus, said:

"The Legislature has no power to declare a tax deed or the recitals therein conclusive evidence of a compliance with those matters which are essential to the exercise of the taxing power, or to those matters which are necessary to be done in order to divest the title of the former owner or those claiming through him, and to execute a valid deed of conveyance. In judicial investigations the law of the land requires an opportunity for trial, and there can be no trial if only one party is suffered to produce his proofs. Except in those cases which fall within the established doctrine of estoppel at the common law, or cases resting on like reasons, it is not within the power of the Legislature to declare that a particular item of evidence shall preclude a party from establishing his rights in opposition to it"

—and after quoting approvingly from Judge Cooley, as we have done, cited *Weeks v. Merkle,* 6 Okla. 714, 52 Pac. 929.

In *Graves v. Northern Pacific Ry. Co.,* 5 Mont. 556, 6 Pac. 16, 51 Am. Rep. 81, it was held that a statute rendering a railroad company liable for cattle killed by it at a valuation to be conclusively fixed by appraisers was unconstitutional as denying a right to trial by jury.

In *Vega Steamship Co. v. Consolidated Ele. Co.,* 75 Minn. 308, 77 N. W. 973, 43 L. R. A. 843, 74 Am. St. Rep. 484, plaintiff was a common carrier of freight on the Great Lakes between two certain points; defendant owned and operated a public grain elevator at one of them. On a certain day S. M. & Co. proceeded to transport, on one of plaintiff's ships, a certain number of bushels of wheat, stored in said elevator, to the other point. The wheat while being delivered from the elevator to the ship was weighed out by the assistant state weighmaster, under the laws of Minnesota. Gen. Stat. 1894, sec. 7675, after prescribing the

duties of the weighmaster, one of which was to weigh said grain, provided that "the action and certificates of such weighmaster and his assistants in the discharge of their aforesaid duties shall be conclusive upon all parties, either in interest or otherwise, as to the matters contained in said certificates." When the grain was delivered to consignee, there was a shortage which was paid for by the carrier pursuant to the terms of the bill of lading, who thereupon, becoming subrogated to his rights, brought suit against the elevator company for the amount of the shortage. On the trial the court directed a verdict for defendant and in effect held that the statute in question made the finding of the weighmaster as to the weights conclusive of that fact as between the parties. In passing, speaking to the statute, the court said:

"But is it competent for the Legislature to make the weight thus ascertained absolutely conclusive? We are of the opinion that it is not. The Legislature cannot in this manner provide for the abitrary exercise of power, so as to deprive a person of his day in court to vindicate his rights. And the law which closes his mouth absolutely when he comes into court is the same, in effect, as the law which deprives him of his day in court. See Cooley Const. Lim. (6th Ed.) p. 452; 6 Am. & Eng. Enc. Law (2d Ed.) p. 1050; *Graves v. Northern P. R. Co.,* 5 Mont. 556 [6 Pac. 16], 51 Am. Rep. 81; *Moore v. State ex rel. Denny,* 55 Ind. 362, 363; *Wantlan v. White,* 19 Ind. 470."

*M., K. & T. Ry. Co. v. Simonson et al.,* 64 Kan. 802, 68 Pac. 653, 57 L. R. A. 765, 91 Am. St. Rep. 248, was a suit against the railway company for a shortage of hay shipped over its lines. There was judgment for plaintiff and the company appealed. The action was brought under Gen. Stat. 1901, secs. 5938-5947, which among other things provided that the railway company should furnish track scales for weighing hay and issue duplicate bills of lading, and concluded one of the sections thus:

"And in any action hereafter brought against any railway company, for or on account of any failure or neglect to deliver any such grain, seed or hay to the consignee, or his heirs or assigns, either duplicate of such bill of lading shall be conclusive proof of the amount of such grain, seed or hay so received by such railway company."

To escape liability the railway company offered to· prove that the full amount of hay receipted for in the bills of lading had not in fact been received by it.   In passing upon the admissibility of the evidence, the court held that part of the statute quoted to be unconstitutional, admitted the evidence, and said:

"Is it in the power of 'the Legislature thus to create a conclusive presumption (of evidence) in a matter of private contract?   We are constrained to believe that it is not.   Every suitor is entitled to his day in court and to have his case determined on such evidence as legal policy will allow.   It is doubtless competent for the Legislature to prescribe many of the rules of evidence.   The subjects of the competency of witnesses, the order of trial, the burden of proof, the effect of public records, the certification of copies of official documents, the *prima facie* character of certain evidence, and other like matters which pertain to the practice rather than the right of proving causes, are lawfully within the sphere of legislative regulation; but it is not within the power of the Legislature to exclude from the courts that which proves the truth of a case, nor on the other hand, to compel them to receive that which is false in character."

And in the syllabus:

"The provision of chapter 100 of the Laws of 1893 (Gen. Stat. 1901, secs. 5938-5947) which makes the specification of weights in bills of lading issued by railroad companies for hay, grain, etc., shipped over their lines, conclusive evidence of the correctness of such weights, is unconstitutional because denying to the companies due process of law, and because wrongfully depriving the courts of the judicial power to determine the weight and sufficiency of evidence."

See, also, *People v. Rose,* 207 Ill. 352, 69 N. E. 762; *McNulty et al. v. Toof et al.,* 116 Ky. 202-210, 75 N. E. 258; *State v. Schlenker,* 112 Iowa, 642, 84 N. W. 698, 51 L. R. A. 347, 84 Am. St. Rep. 360; *Southern P. R. Co. v. Bd. of Railroad Com'rs* (C. C.) 78 Fed. 236; *Ramish v. Hartwell,* 126 Cal. 443, 58 Pac. 920; *Chicago, etc., Ry. Co. v. Minnesota,* 134 U. S. 418, 10 Sup. Ct. 462, 702, 33 L. Ed. 970; *Little Rock, etc., Ry. Co. v. Payne,* 33 Ark. 816, 34 Am. Rep. 55; *Corbin v. Hill,* 21 Iowa, 70; *Weeks v. Merkle,* 10 Okla. 714; *White v. Flynn,* 23 Ind. 46; *Groesbeck et al. v. Seeley,* 13 Mich. 329; *Wantlan v. White,* 19

Ind. 470; *Marx v. Hanthorn,* 148 U. S. 172, 13 Sup. Ct. 508, 37 L. Ed. 410; *Abbott v. Lindenbower,* 42 Mo. 162.

We are therefore of the opinion that the whole act is unconstitutional and must fall. We say the whole act for the reason that the purpose of the act was to accomplish one object only, which was to make the determination of the weights by the weighmaster conclusive evidence of that fact. Where such is the case, the whole act must fall, for it is impossible to suppose that the Legislature would have passed the act with its ultimate object eliminated therefrom.

No other question being raised, the judgment of the trial court is affirmed.

All the Justices concur.