COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

L. G. WASSON COAL MINING
CORPORATION, Appellee.

Court of Appeals of Kentucky.

Feb. 23, 1962.

As Modified on Denial of Rehearing

June 22, 1962.

John B. Breckinridge, Atty. Gen., H. D. Reed, Jr., and William A. Lamkin, Jr., Asst. Attys. Gen., Patrick J. Dixon, Dept. of Highways, Louisville, for appellant.

Robert E. Hatton, Louisville, Winfield K. Denton, Evansville, Ind., Ford Gale Lacey, Boonville, Ind., for appellee.

CULLEN, Commissioner.

L. G. Wasson Coal Mining Corporation (hereinafter "Wasson") brought an action, based on alleged contractual liabilities, against the Commonwealth of Kentucky, Department of Highways, and against Traylor Brothers, Inc. (hereinafter "Traylor"). The latter asserted a cross-claim against the Commonwealth. Judgment was entered against the Commonwealth for $118,173 in favor of Wasson and for $15,-133 in favor of Traylor. The Commonwealth undertook to appeal from the entire judgment but failed to name Traylor in

the statement of appeal with the result that the appeal was dismissed as to Traylor, leaving before us an appeal only as to the part of the judgment in favor of Wasson.

The primary issue on the appeal is whether the Commonwealth had any contractual relationship with Wasson.

Traylor was the prime contractor with the Department of Highways for grade and drain work on a 12-mile section of a highway construction project. Among other things, the contract provided that Traylor would be paid 38 cents per cubic yard for borrow pit excavation. Traylor subcontracted a 4-mile section to Wasson, with provision that Wasson would receive 34.5 cents per cubic yard for borrow pit excavation. The subcontract recited that the relationship between Traylor and Wasson was that of employer and employe, respectively. This latter provision conformed with a requirement of the specifications embodied in the prime contract, that subcontractors would be recognized by the Department of Highways only in the capacity of employes. However, a requirement of the specifications that written consent to the making of a subcontract be obtained from the department was not complied with.

The basis of Wasson's claim for relief in the instant action was that the Department of Highways had erroneously underestimated the amount of borrow pit excavation. Wasson sought recovery for over 300,000 yards of such excavation in excess of the number of yards for which Traylor had received payment under the department's estimate. Wasson's complaint alleged merely the contract between the department and Traylor, the subcontract between Traylor and Wasson, and the underestimating of the excavation work. There was no allegation or claim of any *assignment* of the prime contract to Wasson or of a novation.

Traylor's cross-claim against the department did not allege any underestimate by the department nor did it otherwise assert any failure of the department to perform its obligations under the prime contract; the cross-claim merely alleged that Traylor was entitled to recover 3.5 cents per yard (the difference between the prime contract rate and the subcontract rate) for any excavation found by the court to have been done by Wasson for which payment had not been made by the department.

The answer of the department asserted the defense that the department had no contractual relationship with Wasson, and therefore Wasson was not entitled to maintain any action against the department. It it our opinion that the trial court erred in not sustaining this defense.

We have found only two cases directly in point on the question. They are Road Department Dist. No. 1 v. Mobley Constr. Co., 171 Ark. 585, 286 S.W. 878, 48 A.L.R. 456, and City of Dallas v. Shortall, 131 Tex. 368, 114 S.W.2d 536. In both cases it was held that a governmental unit which had entered into a prime contract for construction work had no contractual relationship with a subcontractor of the prime contractor such as would support an action by the subcontractor against the governmental unit for breach of contract. We think the reasoning of those cases is sound and we concur in their conclusion.

The trial court upheld Wasson's cause of action on the theory of a third party beneficiary contract. We think this theory is completely unsustainable because the essential features of a third party beneficiary contract are not present in this situation. See Road Improvement District No. 1 v. Mobley Constr. Co., supra.

Wasson maintains that Traylor's cross-complaint asserted a claim against the department for the full amount due from the department by reason of the alleged underestimate of the excavation work, and that the trial court merely simplified the form of relief by awarding recovery directly to Wasson, instead of granting a primary judgment against the department in favor of Traylor and a secondary judgment

against Traylor in favor of Wasson. The answer to this contention is that the cross-claim of Traylor did not assert any claim against the department except for an amount to be computed on the basis of such recovery as might be awarded to Wasson; it did not allege any failure of the department to perform its contractual obligations; it did not allege any underestimate of the excavation yardage; it did not seek any recovery except such as was conditioned upon a recovery by Wasson. (It appears that the form and nature of Traylor's cross-claim may have been influenced by the fact that Traylor previously had brought an action against the department for various claims under the prime contract, including a claim for payment of the amount due under the final estimates of the department, and had obtained recovery on all claims except one disputed item.) Under no interpretation could it be said that the Traylor cross-claim asserted any claim for the amount sought by Wasson. So Wasson's lack of a cause of action of its own was not supplied by the cross-claim.

■ ■ Although there was no allegation or claim asserted in the trial court of any assignment of the Traylor contract to Wasson, the latter now advances two theories of assignment, one being that the making of the subcontract amounted to an assignment to Wasson of "the right to collect a portion of money for work done," and the other being that an equitable assignment of money due from the state to Traylor was made by the pleadings in the instant action. The first theory is not sustainable because the subcontract did not purport in any way to give Wasson any right to receive directly from the state any money payable by the state to Traylor under the prime contract; the subcontract provided merely that *Traylor* would pay to Wasson a portion of the money Traylor received from the state. Furthermore, the subcontract by its express provisions, and in compliance with the requirements of the state's specifications, placed Wasson in the status of an *employe* of Traylor, and it would be

a novel proposition indeed that the hiring of an employe constitutes an assignment by the employer of money to become due the employer under a contract with a third person. The second theory also is without merit, because at the time the pleadings in the instant action were filed Traylor had no remaining claim to assign respecting the alleged underpayment for borrow pit excavation. This is because Traylor previously had brought suit against the state asserting various claims for relief under the prime contract (not including any claim for borrow pit excavation work), and under the established rule against splitting a cause of action Traylor could not thereafter have asserted any claim against the state for the borrow pit work. When the instant suit was filed by Wasson, Traylor's claims were gone and there was nothing left to assign.

■ A motion by Wasson to dismiss the appeal was passed to the merits. The theory of this motion is that Traylor was an indispensable party to the appeal. We find no merit in this theory. As hereinbefore pointed out, the primary issue presented on the appeal is whether Wasson had any contractual relationship with the Highway Department such as would sustain an action by Wasson. In no sense is the presence of Traylor indispensable to the determination of that issue. There can be a proper final adjudication of the controversy presented on the appeal without Traylor's being present. See Clay, CR 19.01, Comment, p. 224. Traylor's interests and rights will not be affected by the disposition of this appeal. The mere fact that the failure of the Department of Highways to perfect an appeal as against Traylor has resulted in Traylor's receiving payment of the judgment in its favor does not mean that the final decree entered pursuant to the mandate of the Court on the appeal as to Wasson, dismissing Wasson's claim, will leave the total case in a condition "inconsistent with equity and good conscience" within the meaning of the opinion in Shields v. Barrow, 17 How. 129, 130, 15 L.Ed. 158,

160. Accordingly, the motion to dismiss the appeal is overruled.

The judgment in favor of L. G. Wasson Coal Mining Corporation is reversed, with directions to enter judgment dismissing the complaint.