Walter R. HJELLE, State Highway Commissioner of North Dakota, Plaintiff and Appellant,

v.

SORNSIN CONSTRUCTION COMPANY of Fargo, North Dakota, and Sellin Brothers, Inc., of Hawley, Minnesota, a Joint Venture, Defendants and Cross-Appellants,

and

Nelson Paving Company, Inc., of Williston, North Dakota, Defendant and Respondent.

No. 8564.

Supreme Court of North Dakota.

Dec. 29, 1969.

Rehearing Denied Jan. 16, 1970.

Helgi Johanneson, Atty. Gen., and Vernon R. Pederson, Special Asst. Atty. Gen., Bismarck, for appellant.

Wattam, Vogel, Vogel & Peterson, Fargo, and Stiening, Olson, Thysell & Gjevre, Moorhead, Minn., for defendants and cross-appellants.

Pringle, Herigstad, Meschke, Loder, Mahoney & Purdy, Minot, and McIntee, Whisenand & Calton, Williston, for defendant and respondent.

ERICKSTAD, Judge.

This is an appeal by the plaintiff, Walter R. Hjelle, State Highway Commissioner, hereafter called the Commissioner, from a judgment of the District Court of Burleigh County dated April 2, 1969, in favor of Nelson Paving Company, Inc., of Williston, hereafter called the Subcontractor. A cross-appeal has been filed by Sornsin Construction Company of Fargo and Sellin Brothers, Inc., of Hawley, Minnesota, a joint venture, hereafter called the Prime Contractor.

The pertinent part of the judgment appealed from reads:

1. That Sections 24–02–26 through 24–02–33 of the North Dakota Century Code are valid and constitutional.

2. That there is privity of contract between the Plaintiff and the Defendant,

Nelson Paving Company, Inc., and that the controversies arising herein shall be determined by arbitration pursuant to Section 24–02–26 through 24–02–33 of the North Dakota Century Code.

3. That the controversies between the Defendant, Nelson Paving Co., Inc., and the Defendant, Sornsin–Sellin, a Joint Venture, may be determined by arbitration under Section 24–02–26 through 24–02–33 or by action in Court.

On April 11, 1966, the Prime Contractor was awarded certain highway construction contracts, mainly for the grading and application of aggregate base to certain parts of U. S. Highway 83 situated in Bottineau, Renville, and Ward Counties. On April 20, 1966, the Commissioner approved the Prime Contractor's request to sublet certain items of the contract to the Subcontractor. On February 1, 1968, the Subcontractor served the Commissioner and the Prime Contractor with a "petition for arbitration," naming the Commissioner and the Prime Contractor as respondents. By complaint dated February 8, 1968, the Commissioner initiated a declaratory judgment action whereby he sought (1) to have N.D.C.C. §§ 24–02–26 through 24–02–33 declared unconstitutional and void, and (2) if the sections were found to be constitutional, to have the court award a judgment declaring that the Subcontractor could not assert any claims against the Commissioner.

The Subcontractor filed an answer and counterclaim, denying the contentions of the Commissioner and asserting that if the Court did determine that the arbitration statutes were unconstitutional and void or that they were not applicable to the claims of the Subcontractor, the Subcontractor was entitled to a judgment against the Commissioner of $497,660.80, the amount being the same that it asserted it was entitled to in its petition for arbitration.

The Prime Contractor denied that the provisions of N.D.C.C. ch. 24–02 were unconstitutional, asserted that the petition of the Subcontractor was fatally defective in that it did not comply with the applicable provisions of ch. 24–02, and asserted that to the extent the claims set forth in the petition for arbitration were not frivolous and greatly exaggerated, they could properly be the subject of arbitration between the Commissioner and the Prime Contractor, acting on behalf of the Subcontractor.

At the same time the Subcontractor filed its cross-claim, asking that a declaratory judgment be entered, declaring that the arbitration statutes (§§ 24–02–26 through 24–02–33) are valid and constitutional and apply to the claims of the Subcontractor as set forth in its petition for arbitration, and asking that a board of arbitration be established, pursuant to § 24–02–26, with the Subcontractor being entitled to one arbiter and the Commissioner and the Prime Contractor together being entitled to one arbiter, a third arbiter to be chosen by the other two. It further asks that if the Court determines that the arbitration statutes are unconstitutional and void or that they are not applicable to the claim of the Subcontractor as set forth in its petition, a judgment be given the Subcontractor against the Commissioner for $497,660.80.

The Prime Contractor filed an answer to the cross-claim, asserting that it had fully performed all of its undertakings and obligations under its contract with the Commissioner and under the subcontract with the Subcontractor; and, pertinent among many other allegations, it asserted that the Subcontractor did not have any right to invoke arbitration against the Prime Contractor, but that the Prime Contractor, on behalf of the Subcontractor, was fully prepared and willing to submit to arbitration under ch. 24–02 any claim that the Subcontractor made in good faith against the Commissioner, providing a sufficient surety was obtained.

It was stipulated that the counterclaim and cross-claim of the Subcontractor should be held in abeyance until final disposition of the issues raised in the declaratory judgment action.

It is from the judgment of the district court earlier referred to that the Commissioner appeals and the Prime Contractor cross-appeals.

The first point asserted by the Commissioner on appeal is that §§ 24–02–26 through 24–02–33 (requiring the Commissioner and all parties contracting with him to submit to compulsory arbitration all controversies arising out of any contract for the construction or repair of highways which cannot be voluntarily resolved between the parties) are unconstitutional. The arbitration statute most relevant to the issue is § 24–02–26, which reads:

24–02–26. Controversies to be arbitrated —Arbitrators—How named.—All controversies arising out of any contract for the construction or repair of highways entered into by the commissioner shall be submitted to arbitration as provided in this chapter, if the parties cannot agree. Any person who voluntarily enters into a contract for the construction or repair of highways shall be considered as having agreed to arbitration of all controversies arising out of such contract. Three persons shall compose the arbitration board, one of whom shall be appointed by each of the parties and the two thus appointed shall name a third.

North Dakota Century Code.

The Commissioner contends that the compulsory arbitration called for under the statute denies to him, acting as agent of the people of North Dakota, and to private parties who engage in highway construction, the right to due process of law and the use of the courts as guaranteed by §§ 13 and 22 of article I of the North Dakota Constitution and § 1 of article 14 of the amendments to the United States Constitution. He further asserts that the statutes deprive the parties of the right to a jury trial reserved to them by § 7 of article I of the North Dakota Constitution, and that they are in violation of § 120 of article IV of the North Dakota Constitution, which provides that tribunals of conciliation have no power to render judgment obligatory on the parties unless the parties have voluntarily submitted their matters of difference and have agreed to abide by the judgment of the tribunal.

The pertinent parts of those sections read:

Section 13. In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. No person shall be twice put in jeopardy for the same offense, nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law.

North Dakota Constitution.

Section 22. All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay. Suits may be brought against the state in such manner, in such courts, and in such cases, as the legislative assembly may, by law, direct.

North Dakota Constitution.

Section 1. * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

United States Constitution, amend. XIV.

Section 7. The right of trial by jury shall be secured to all, and remain inviolate; * * *.

North Dakota Constitution.

Section 120. Tribunals of conciliation may be established with such powers and duties as shall be prescribed by law or the powers and duties of such may be conferred upon other courts of justice; but such tribunals or other courts when sitting as such, shall have no power to render judgment to be obligatory on the parties, unless they voluntarily submit their matters of difference and agree to abide the judgment of such tribunals or courts.

North Dakota Constitution.

■ First of all, we think it incumbent upon us to point out that the Commissioner cannot assert the constitutional rights, if they are such, of the adverse parties, to support his assertion that the statutes should be set aside as unconstitutional. The general rule is that a litigant may assert only his own constitutional rights or immunities. State v. Gamble Skogmo, Inc., 144 N.W.2d 749, 769 (N.D.1966).

■ As the Commissioner has presented no weighty countervailing policies to cause an exception to the general rule, we hold that he has no standing to assert the constitutional rights of the adverse parties to this action.

Notwithstanding that we are here concerned with the constitutionality of arbitration statutes, the Commissioner asserts that the said statutes are in derogation of § 120 of article IV of the North Dakota Constitution, previously quoted.

If we may summarize the Commissioner's contentions, it would appear that it is his position that arbitration and conciliation are identical, and that an arbitration or conciliation proceeding is valid only if the constitutional rights of the parties are waived by a voluntary consent, or only if they are preserved by provisions for a judicial review of the issues, which review, he asserts, could only be accomplished by an appeal fully de novo or on the record.

Since the statutes applicable to arbitration of highway construction and repair contract disputes make no provision for either, it is his position that they cannot be upheld.

Let us examine his most persuasive thorities.

His first reference is to 6 C.J.S. Arbitration and Award § 2, at 155 (1937):

[A] statute which provides for compulsory arbitration, and makes the decision of the arbitrators final and conclusive is invalid, but if a statute for compulsory arbitration gives to the parties the further right by appeal from the decision of the arbitrators, or other procedure, to carry the case before a regular judicial tribunal and have the issues there tried, it is not invalid. (footnotes omitted)

The opinion cited in support of the proposition that a statute which provides for compulsory arbitration and makes the decision of the arbitrators final and conclusive is invalid is Cutler v. Richley, 151 Pa. 195, 25 A. 96 (1892). In *Cutler* the Pennsylvania Supreme Court held the 1873 Supplement to the Special Legal Arbitration Act of 1870 to be unconstitutional because of its compulsory feature. Notwithstanding that holding, finding an implied waiver, from an agreement entered into between the parties, of any rights the appellants might otherwise have had, the court dismissed the appeal.

*Cutler* may be distinguished from the instant case on the following basis: It involved a dispute between private parties, not between the State and a subcontractor regarding a contract with the State. Although the provisions of the Pennsylvania statute are not set forth fully in *Cutler*, it does not appear that the statute was designed to cover disputes arising between the State and private parties. We believe that the two cases, *Cutler* and this case, are so different that the reasoning of Cutler could not apply here; but assuming, for the sake of argument,

that the reasoning should apply, because the Legislature, in enacting the arbitration statutes in question, required disputes arising in highway construction and repair contracts to be settled by arbitration, the Legislature consented on behalf of the State, and, accordingly, on behalf of its agent, the Highway Commissioner, to such a mode of settlement.

The following quotation is from an additional reference cited us by the Commissioner in support of his position:

> Arbitration, as commonly understood, is a proceeding voluntarily initiated by the parties, and at common law its basis is their voluntary act. Some statutes, however, have provided for what is known as "compulsory arbitration," which has been defined as an arbitration proceeding to which the consent of at least one of the parties is enforced by statutory provisions. Generally, when the effect of statutes has been to coerce parties to submit to arbitration, without any agreement or assent on their part to do so, the courts have declared them unconstitutional as depriving the parties of liberty and property without due process of law, or as depriving parties of their constitutional right to a trial by jury. (footnotes omitted)

5 Am.Jur.2d Arbitration and Award § 9, at 526 (1962).

Cited in the footnotes as supporting that reference are the following: Dorchy v. Kansas, 264 U.S. 286, 44 S.Ct. 323, 68 L. Ed. 686 (1924); Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, 43 S.Ct. 630, 67 L.Ed. 1103, 27 A.L.R. 1280 (1923); Graves v. Northern Pac. Ry. Co., 5 Mont. 556, 6 P. 16 (1885); annot., 55 A. L.R.2d 440, 445, §§ 5, 10; In re Smith, 381 Pa. 223, 112 A.2d 625, 55 A.L.R.2d 420 (1955), appeal dismissed Smith v. Wissler, 350 U.S. 858, 76 S.Ct. 105, 100 L.Ed. 762.

In Dorchy and in Wolff different parts of the Kansas Court of Industrial Rela-

tions Act of 1920 were attacked as unconstitutional. As stated by Justice Brandeis in Dorchy, the purpose of the act was to insure continuity of operation in coal mining and other businesses declared to be affected with a public interest, and the means provided for accomplishing continuity was a system of compulsory arbitration of industrial disputes. In Wolff the United States Supreme Court, speaking through Chief Justice Taft, after determining that the meat packing industry subject to the Court of Industrial Relations was not "clothed with a public interest" and finding that no public emergency existed, held that the Industrial Court Act, insofar as it permitted the fixing of wages in the plaintiff in error's packing house, was in conflict with the fourteenth amendment, because it deprived the packing house of its property and liberty of contract without due process of law. It must therefore be assumed that the compulsory arbitration features of the act made it unconstitutional.

At issue in Dorchy was whether § 19 of the Kansas Court of Industrial Relations Act was severable from the other provisions of the act so that it might stand notwithstanding the unconstitutionality of the compulsory arbitration features. Holding that a decision of the highest court of the state as to the severability of a provision of a state law is conclusive upon the United States Supreme Court, finding that the Supreme Court of Kansas had not passed upon the question of severability, and realizing that the United States Supreme Court's decision in Wolff had been rendered after the Kansas Supreme Court's decision in Dorchy, the United States Supreme Court ordered that the Kansas Supreme Court's decision in Dorchy be vacated.

We think it is very important to note that neither Wolff nor Dorchy is concerned with statutes compelling compulsory arbitration of contracts entered into between private parties and the State. In addition, in each of those cases the constitutional issues were raised by private par-

ties on their behalf, not by the State on its behalf.

The third case referred to in support of the rule asserted in American Jurisprudence is Graves v. Northern Pacific Railway Co., *supra.* In *Graves* the Montana statute required the railroad companies to pay for livestock killed or injured by them. The statute provided for a determination of the damages under certain circumstances by appraisers and permitted no appeal from that determination. In finding the statute unconstitutional, the Montana Supreme Court said that the statute prevented the railroad company from exercising its right of appeal from the findings of the appraisers, thus depriving the railroad company of its right of trial by jury. It accordingly concluded that the compulsory appraisal section violated the United States Constitution.

It is obvious that the arbitration statute in *Graves* is much different from the arbitration statute in this case, in that the Montana statute attempted to settle disputes between private parties, who are guaranteed the right to a jury trial; whereas in this case the statute attempts to settle disputes between the State and private parties, and the State, through its Commissioner, is attempting to contend that it has been deprived of certain constitutional rights.

Application of Smith, *supra,* adds nothing to the Commissioner's arguments, inasmuch as it merely reaffirms the previously asserted propositions that, ordinarily, statutes providing for arbitration of private disputes, to be valid, must either be based upon consent of the parties or permit an appeal to the courts from the decision of the arbitrators.

We find nothing in the note on arbitration and award contained in 55 A.L.R.2d 420 which the Commissioner has also referred to in support of his position, that is not repetitious of the rules set forth in the decisions which we have discussed.

None of these citations is applicable to the instant case. Accordingly, we see nothing in the provisions of the state or federal constitutions referred to us prohibiting the arbitration statutes in question, which require the determination by arbitration of disputes arising out of highway construction and repair contracts between the State and a prime contractor.

It would serve little purpose for us to analyze and discuss each of the other decisions referred to us in support of the Commissioner's position relative to the issue under consideration. It is sufficient to say that we have considered each of them and found them unpersuasive.

The next issue we must decide is whether the Subcontractor, under the terms of the contract and the applicable laws, is entitled to be heard on his claim against the Commissioner by a board of arbitration or by a court. It is the Commissioner's position that the Subcontractor has no right to be heard on his claim against the Commissioner by either, and that the Subcontractor's only recourse is in an action at law against the Prime Contractor. We do not agree.

The main reason we cannot agree is that such a construction (which would deny to the Subcontractor, whose contract has been approved by the Highway Commissioner, the right to arbitrate its claims against the Highway Commissioner, a right which the Prime Contractor has) would deny to the Subcontractor the equal protection of the laws and thus would be violative of § 1 of the fourteenth amendment to the United States Constitution and § 20 of the North Dakota Constitution. We can conceive of no reasonable basis upon which the Prime Contractor could be classified differently from the Subcontractor, especially when to classify it differently would be to deprive it of any recourse against the State. N.D. C.C. § 32–12–02 authorizes an action against the State arising from contract. In the instant case, however, the Subcontractor had no contract with the State and

thus would have no right under that statute—or any other statute that we know of—to assert its claims against the State.

■ Courts will construe statutes so as to harmonize their provisions with the Constitution if it is possible to do so, to the end that they may be sustained. See Syllabus 2, State v. Miller, 129 N.W.2d 346, 357 (N.D.1964). We construe the arbitration statutes to give the Subcontractor the right which indisputably has been given to the Prime Contractor under them. Legislation cannot arbitrarily divide a class into two parts and constitute a different rule of law governing each of the parts. See Syllabus 7, Melland v. Johanneson, 160 N.W.2d 107, 109 (N.D.1968). To place the Prime Contractor and the Subcontractor into two different classes and to grant one the right to arbitrate but deny it to the other, would be an arbitrary classification.

The first sentence of § 24–02–26 reads: "All controversies arising out of any contract for the construction or repair of highways entered into by the commissioner shall be submitted to arbitration as provided in this chapter, if the parties cannot agree." The Commissioner contends that this language permits arbitration of disputes between the Commissioner and a prime contractor only, whereas the Subcontractor argues that it permits arbitration of disputes not only between a prime contractor and the Commissioner but also any between a subcontractor and a prime contractor or between a subcontractor and the Commissioner or, as in this case, between a subcontractor on one side and the Commissioner and a prime contractor on the other.

The second sentence of the section does not restrict the application of the section to the Commissioner and a prime contractor by its language: "Any person who voluntarily enters into a contract for the construction or repair of highways shall be considered as having agreed to arbitration of all controversies arising out of such contract." The Subcontractor comes within the term "any person who voluntarily enters into a contract for construction or repair of highways."

The Commissioner, however, argues that he has not entered into any contract with the Subcontractor and thus that he is not obligated to arbitrate any claims the Subcontractor might assert. This might be a reasonable conclusion and in line with the decisions cited by the Commissioner relating to privity of contract if it were not that the Commissioner's duty to arbitrate arises from law, not from the terms of the construction and repair contracts, and we have explained why it is necessary to construe the statute as we have. In the instant case the Commissioner approved the subcontract. Such an approval does not lessen the Prime Contractor's responsibility under the contract, but it is a recognition by the Commissioner of the subletting of a part of the contract and an approval of the Subcontractor, indicating a willingness to work with the Subcontractor and a willingness to permit it to perform the subcontract.

■ We believe that the second sentence of § 24–02–26 gives the Subcontractor the right to arbitrate its claims against the Prime Contractor. In other words, the Subcontractor may arbitrate its claims against both the Commissioner and the Prime Contractor, but these claims must be asserted in separate proceedings. We come to the conclusion that claims against the Commissioner must be arbitrated in proceedings separate from a proceeding to arbitrate claims against a prime contractor, because of the third sentence of § 24–02–26, which reads: "Three persons shall compose the arbitration board, one of whom shall be appointed by each of the parties and the two thus appointed shall name a third." This indicates that only two parties are to be involved in one arbitration proceeding. We think the provisions of § 24–02–27 further substantiate this view, in that the section's provision that the demand for arbitration by the

"party" desiring arbitration "shall be served upon the opposite party" discloses that only two parties are to arbitrate in one proceeding.

Section 24–02–29 further indicates that only two parties shall participate in one arbitration proceeding. It reads:

24–02–29. Arbitration may proceed although one party fails to agree.—If either party refuses to submit to arbitration as provided in this chapter, he shall be deemed to have waived all claims and demands, and the arbitrators shall proceed to determine the controversies set forth by the moving party according to the justice of the case. Judgment shall be entered upon the award of such arbitrators in all things the same as though the submission to arbitration has been signed by both parties.

North Dakota Century Code.

It is unlikely that the Legislature would have used the words *either* or *both* if it had intended to provide a right to arbitration to more than two opposing parties in one proceeding.

 Because of the conflict-of-interest problems that would arise, we reject the view of the Subcontractor that the statute should be so construed as to permit the Subcontractor to appoint an arbiter, the Prime Contractor and the Commissioner to jointly appoint an arbiter, and those two arbiters to appoint the third. For a like reason we also reject the view of the Prime Contractor that the statute must be construed so as to provide that any claims the Subcontractor has against the Commissioner should be submitted to arbitration by the Prime Contractor on behalf of the Subcontractor when proper demand and security is given.

Accordingly, the judgment of the district court must be reversed in part and modified so that the Subcontractor is required to arbitrate its claims with the Commissioner in a proceeding separate and apart from any claims which it has to arbitrate with the Prime Contractor, and further so that its only recourse is through the arbitration statutes. For that reason the case is remanded.

PAULSON and KNUDSON, JJ., concur.

STRUTZ, J., concurs in the result.

TEIGEN, Chief Justice (dissenting).

I dissent.

I do not agree that it is necessary to interpret Section 24–02–26, N.D.C.C., which provides for compulsory arbitration of controversies between the commissioner and the prime contractor, to include a subcontractor of the prime contractor to make it constitutional. If the reasoning of the majority on this question is correct, then it would seem that the same construction should be given to Section 32–12–02, N.D.C.C., which authorizes actions against the State on claims arising upon a contract. However, the majority state to the contrary and adopt this reason as a further cause for extending the arbitration statute to include subcontractors.

The majority premise their decision on the theory that a subcontractor must be entitled to recourse against the commissioner, which indicates that some contractual relationship or privity exists between the subcontractor and the commissioner. I fail to see such relationship. The parties to the prime contract are the commissioner and the prime contractor. The parties to the subcontract consist of the prime contractor and the subcontractor. There is no privity or contractual relationship between the subcontractor and the commissioner. It is my opinion that the majority have erred in making this implication. There is no provision by statute, which I have been able to find, that creates a contractual relationship between the commissioner and the subcontractor of the commissioner's prime contractor. In the absence of statute the

holdings of the courts on this question appear unanimously to be that where a governmental unit enters into a prime contract for construction work, it has no contractual relationship with the subcontractor that will support an action by the subcontractor against the governmental unit for breach of contract. See Road Improvement Dist. No. 1 of Conway County v. Mobley Construction Co., 171 Ark. 585, 286 S.W. 878, 48 A.L.R. 456; City of Dallas v. Shortall, 131 Tex. 368, 114 S.W.2d 536; Commonwealth of Kentucky, Department of Highways v. L. G. Wasson Coal Mining Corporation (Ky.), 358 S.W.2d 347.

It has also been held that consent of the governmental unit to the subletting by the prime contractor does not render the governmental unit liable to the subcontractor. Road Improvement Dist. No. 1 of Conway County v. Mobley Construction Co., *supra*; Jordan Company v. Adkins, 105 Ga.App. 157, 123 S.E.2d 731. In my research I have found no cases which have held to the contrary.

That no privity of contract exists between the owner and the contractor's subcontractors is well-established law. Numerous cases may be found in West's Digest System under the title, "Contracts", ▉▉▉▉ Baker v. J. W. McMurry Contracting Co., 282 Mo. 685, 223 S.W. 45; McGinnis v. Milhollin, 64 Ga.App. 462, 13 S.E.2d 591; Pittman Construction Company v. Housing Authority of New Orleans (La.App.), 169 So.2d 122, cert. denied, 247 La. 344, 170 So.2d 865.

For the reasons aforesaid, it appears to me that we have two classes of persons in the separate contracts. First is the one who contracts with the commissioner and the other is the one who contracts with a private entity. The State must look to its prime contractor for satisfactory performance of the contract whether the work be performed by the prime contractor or its subcontractor. On the other hand, the subcontractor must look to the prime contractor for the enforcement of its contract, and the prime contractor may have a cause against the subcontractor for breach of the subcontract.

"Statutes in some jurisdictions provide for the arbitration of disputes in certain classes of cases, and such statutes have been upheld against various objections on constitutional matters. Universality in application is not required of such statutes, and there is no unconstitutional discrimination by making the statute applicable only to certain classes, or exempting other classes from its operation, provided the classification is based on reasonable grounds and the law applies equally to all within the class." 5 Am. Jur.2d, Arbitration and Award, Sec. 8, page 525.

The statute interpreted in this case reads as follows:

"All controversies arising out of any contract for the construction or repair of highways entered into by the commissioner shall be submitted to arbitration as provided in this chapter, if the parties cannot agree. Any person who voluntarily enters into a contract for the construction or repair of highways shall be considered as having agreed to arbitration of all controversies arising out of such contract. Three persons shall compose the arbitration board, one of whom shall be appointed by each of the parties and the two thus appointed shall name a third." Section 24–02–26, N.D.C.C.

The first sentence of this section defines the contracts which are made subject to arbitration when controversies arise. It restricts the arbitration requirement to those contracts for the construction and repair of highways which are entered into by the commissioner. The second sentence binds the one contracting with the commissioner to arbitrate controversies arising out of such contracts by making this provision a part of the agreement between them. Thus the first sentence defines a contract and the second sentence makes those who enter into such contracts bound, by agree-

ment, to arbitrate all controversies arising out of such contracts. The statutes on arbitration become a part of the contract. The language is precise. The wording of Section 24-02-26, which defines the contracts that are subject to arbitration, leaves no room for doubt. Only contracts entered into with the commissioner require arbitration when controversies arise. The parties to subcontracts with the prime contractor are not bound by the statute and may enter into such contractual agreement with the prime contractor as is allowed any contracting party. They may contract to arbitrate disputes if they so desire.

Where the language of a statute is clear, certain, and unambiguous, the only duty of the court is to give effect to the legislative intent expressed therein and, if such statute does not violate some provision of our Constitution, the court must give effect to the law. Brenna v. Hjelle (N.D.), 161 N.W.2d 356; Asbury Hospital v. Cass County, 72 N.D. 359, 7 N.W.2d 438.

The majority determined that if Section 24-02-26, N.D.C.C., and related statutes, does not include the subcontractor as well as the prime contractor, it violates the "equal privileges and immunities clause" of the State Constitution (Sec. 20) and the "equal protection clause" of the Federal Constitution (Article 14). As long as the law operates alike on all members of a class, including all persons similarly situated, it is not in violation of those sections. Classification must be based upon such differences in situations or purposes between the persons included in the class and those excluded therefrom as fairly and naturally suggests the propriety of, and necessity for, different or exclusive legislation. The State Constitution and the Fourteenth Amendment to the Federal Constitution do not prohibit or prevent classification provided such classification is reasonable for the purpose of the legislation, is based upon proper and justifiable distinctions considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or divert another, or to im-

press unlawfully in its administration. F. W. Woolworth Co. v. Gray, 77 N.D. 757, 46 N.W.2d 295; Melland v. Johanneson (N.D.), 160 N.W.2d 107. However, as long as the law operates alike on all members of a class, including all persons similarly situated, it is not in violation of those sections. State for Benefit of Workmen's Compensation Fund v. E. W. Wylie Co., 79 N.D. 471, 58 N.W.2d 76.

The majority said that they could conceive of no reasonable basis upon which the prime contractor could be classified differently from the subcontractor. I think there is a very cogent basis. It is elementary that one may not sue the State unless the State has given its permission. The State has given such permission in actions arising upon contract. Section 32-12-02, N.D.C.C. It appears the majority agree. One who contracts with the commissioner contracts with the State as the commissioner is authorized, by statute, to enter into road construction and repair contracts on behalf of the State. Section 24-02-03(5), N.D.C.C. Thus, in the absence of the compulsory arbitration statute, one who contracts with the State for the construction or reconstruction of a highway, could bring action under Section 32-12-02 were it not for the provision contained in Section 24-02-26, N.D.C.C., under consideration in this case. It provides that all controversies arising out of any contract for the construction or repair of highways, entered into by the commissioner, shall be submitted to arbitration. This statute is mandatory. Section 24-02-31, N.D.C.C., provides that the arbitrators shall determine all controversies between the parties growing out of the contract. Section 24-02-28, N.D.C.C., provides that the submission of a controversy to arbitration must provide for the entry of judgment upon the award by the district court. In this manner the claim of a prime contractor, under a contract with the commissioner, is settled by arbitration as a substitute for the prime contractor's right to bring action under Section 32-12-02, N.D.C.C. The subcontractor is not in the same

position. He has no contract with the commissioner or the State and, therefore, is not of the same class as the prime contractor. The purpose of the arbitration statute is to eliminate actions against the commissioner and provides that controversies must be settled by arbitration. This is a reasonable classification and reasonably necessary to effect the purpose for the construction and repair of the State highway system from moneys appropriated for the Department of State Highways by the State or received from other sources, such as Federal grants. For the reasons aforesaid, I believe that the arbitration statutes need not be given the strained construction given them by the majority, and that the language of the statute is clear, certain, and unambiguous and open to but one reasonable construction, and that we must interpret the statute as it reads. In my opinion, it requires arbitration only as to those controversies arising out of any contract for the construction or repair of highways entered into by the commissioner. The commissioner did not enter into the subcontracts in question and, therefore, the subcontractor is in no position to demand arbitration between it and the commissioner, or the prime contractor, under authority of the statute.