(88 N. W. Rep. 652.)

---

JAMES CALDWELL *vs.* THE BROOKS ELEVATOR COMPANY.

Opinion filed Dec. 6, 1901.

**Arbitration—Oath of Arbitrators.**

> From the evidence recited in the opinion, *held*: That arbitrators appointed in writing to adjust disputes between plaintiff and defendant were duly sworn before entering upon the discharge of their duties, and the fact that a subsequent oath taken by them and reduced to writing was defective is of no consequence.

**Action on Award—Impeachment.**

> In an action on an award the defendant may interpose defenses of an equitable nature tending to impeach the award, but the correctness of the award upon the merits, when made in good faith, cannot be inquired into in such action.

**Improper Action of Arbitrators.**

> If the arbitrators refused to consider evidence offered, such action, if pleaded and proven, would vitiate the award.

**Intendments Favor the Findings.**

> Every reasonable intendment will be presumed in favor of an award.

Appeal from District Court, Grand Forks County; *Fisk,* J.
Action by James Caldwell against the Brooks Elevator Company. Judgment for plaintiff. Defendant appeals. Affirmed:

*Bosard & Bosard,* for appellant.

The arbitrators were not sworn according to § 5983, Rev. Codes, and therefore the award sued upon in this action is void and no judgment should have been entered upon it. *Wilkins* v. *Van Winkle,* 3 S. E. Rep. 761. The statute is mandatory and failure of the arbitrators to take the oath prescribed by this section is jurisdictional and the award rendered void and incapable of supporting a valid judgment. *Combs* v. *Little,* 3 Green, (N. J.) 310, 40 Am. Dec. 207; *Inslee* v. *Flagg,* 2 Dutch, (N. J.) 368, 69 Am. Dec. 580; *Overton* v. *Alpha,* 13 La. Ann. 558; *Frizzell* v. *Fickes,* 27 Mo. 557; *Toler* v. *Hayden,* 18 Mo. 399; *Fassett* v. *Smith,* 41 Mo. 516.

*John P. Galbraith,* for respondent.

Appellant appeared, participated in the arbitration, produced evi-

dence before the arbitrators after it had heard the oath administered to them. The appellant is estopped from denying that the arbitrators were properly sworn. *Kelsey* v. *Darrow,* 22 Hun. 125; *Greer* v. *Canfield,* 56 N. W. Rep. 883. This is not a motion to affirm the award of the arbitrators, but an action on an award made by them. The award was good as a common law award, and even though the arbitrators were not sworn at all appellant would not be entitled to a reversal in this case. *Burnside* v. *Whitney,* 21 N. Y. 148; *Browning* v. *Wheeler,* 35 Am. Dec. 617; *Howard* v. *Sexton,* 4 N. Y. 157; *Greer* v. *Canfield,* 56 N. W. Rep. 883.

MORGAN, J. This is an action upon an award found by arbitrators duly appointed by the parties in writing. The complaint alleges, in substance, as follows: that the plaintiff and defendant, on February 28, 1898, entered into an agreement in writing, which said agreement was set out in the complaint at length, being the submission of the differences of the parties to arbitration. Such agreement or submission recited that differences and disputes had arisen between the plaintiff and the defendant as to business matters pending between them; that the plaintiff claimed that the defendant was indebted to him on account of services performed by him for the defendant, and the defendant claimed that the plaintiff was indebted to it on account of a breach of a certain contract entered into between them, wherein the plaintiff guarantied weights and grades of all wheat purchased by him as agent of said defendant; that such parties therein agreed to submit all such differences and disputes to three arbitrators, to be chosen as prescribed in such agreement; that such arbitrators should meet, and, after being sworn, should hear the allegations and evidence of the parties, and make an award thereon, which award should be filed in the office of the clerk of the district court of Grand Forks county, and judgment entered thereon. The complaint further alleges that such agreement or submission was duly acknowledged by said parties, and that three arbitrators were duly appointed by them as therein prescribed; that the arbitrators were duly sworn, and entered upon the discharge of their duties; that plaintiff and defendant appeared before such arbitrators, and presented their differences and disputes to them; that, after hearing such evidence, and considering the same, the arbitrators duly decided and awarded that the plaintiff should have and recover from the defendant the sum of $262; that such award was duly filed in the office of the clerk of the district court of Grand Forks county, and the parties notified of such award and filing. Judgment is demanded against the defendant for such sum of $262, with costs and disbursements. The answer denies that the arbitrators were duly sworn. It further alleges that there existed between said parties a contract, wherein the plaintiff guarantied the weights and grades of all the wheat bought by plaintiff as agent of the defendant at its elevator; that such contract was offered in evidence at the hearing before such arbitrators; that they refused

to consider the same, or did not give to it its correct legal effect and interpretation. The trial court made findings of fact and conclusions of law favorable to plaintiff, and ordered judgment in his favor for the sum of $262. Defendant appeals from such judgment, and demands a trial de novo, and a review of all the evidence in this court.

The award was made on the 17th day of March, 1898, and filed in the office of the clerk of the district court of Grand Forks county immediately thereafter. From the time of the filing of the award in said clerk's office no action or proceeding in reference thereto was taken by either of the parties until this action was commenced in March, 1900. The plaintiff did not move, as he might have done, to have the award affirmed under section 5986, Rev. Codes, 1899; nor did the defendant move to vacate or modify the same as it might have done under sections 5987 or 5988, Id. The year during which such proceedings might have been taken was allowed to pass without anything being done by either party towards affirming or vacating the award. The defendant makes no claim against the validity of the award except as alleged in the answer, nor is any question raised as to the bringing or maintenance of the action in the present form. The defendant confines its attacks on the award to the contention that the arbitrators were not sworn, and that they did not give due effect to nor consider the contract of employment between the plaintiff and the defendant company. The facts in regard to the swearing of the arbitrators are that the arbitrators met for conference, and before proceeding with their duties the matter of being sworn was considered. A notary public was sent for, who appeared before the arbitrators, and then and there administered an oath to them by reading the same from the statute. Afterwards, and before the award was signed, the arbitrators concluded that the oath should have been reduced to writing. It was thereupon decided that the notary should write out an oath, which he did. This oath was then signed by the arbitrators, and attached to and made a part of the award as filed in the clerk's office. The written oath did not conform to the terms of the statute. The statute provides that the arbitrators must be sworn to make a "just award according to their understanding." Section 5983. As written out by the notary, the oath did not contain a statement that they would make a just award. The word "just" was omitted therefrom.

In this case we need not determine whether such an oath was fatally defective or not, or whether the defect in its terms was waived; as, under the view we have have taken of the evidence, the arbitrators were duly sworn by the notary before they commenced their deliberations. The facts in regard to swearing the arbitrators before they entered upon a performance of their duties are as follows, so far as material: The plaintiff testified: "I was

present when the arbitrators were sworn. * * * Mr. Murphy went out after a law book, to see what was to be done,—how to do it. The arbitrators were sworn at that time, and went ahead and considered the matter." Mr. Murphy, one of the arbitrators, testified: "At the time the arbitrators met for conference they were sworn by Mr. Dennis. Question. You may state whether or not Mr. Dennis, who administered the oath, had in his hand the statute of the state of North Dakota. Answer. He did. I don't know to what part of the statute it was opened, but he turned to that part with reference to the oath, and read it from the statute. Exhibit A is the oath I signed. I think this was made up afterwards, and we signed it. It was made up after we had made up the award. I remember that they sent out for Mr. Dennis, and I remember him coming in there with the Code and reading the oath to us; but whether that is exactly like the Code or not I don't know." Mr. Bendeke, an arbitrator, testified: "When the arbitrators met, we talked up the question of being sworn, and called Mr. Dennis in. He swore us. The first thing he had to do was to look up the Code. We looked up the Code for the legal form to be used in a court of arbitration. The oath was administered by Mr. Dennis. He read it to us, and afterwards wrote it down. I don't remember whether it was written down before we looked through the different papers or afterwards. He read it from the Code or a law book. I don't remember about the form of it. Defendant's Exhibit A is the oath we signed. Afterwards or before, I can't say. Whether before taking the testimony or looking through the evidence, I am not sure. I remember we were sworn by what Mr. Dennis read to us, and we afterwards signed what he wrote out." Mr. Dennis, the notary public, testified: "I examined the Code at that time to see what was required of the arbitrators. At the time I administered the oath, I read it, I think, from the Code. We were at a loss to know what the procedure was in the matter, and I administered the oath in accordance with the instructions in the Code. Question. When was it that defendant's Exhibit A was made up and signed by the arbitrators? Answer. As I remember, it was after they considered the evidence in the case. That form was made up because we understood it was required by the statute." On cross-examination he testifies that the oath administered to them was the same oath that was written down by him, so far as contents are concerned. Upon this testimony we have no hesitation in holding that there is no showing made that the oath was not administered in conformity with the requirements of the statute as to the contents of the oath. The oath was not required to be reduced to writing, and, if orally administered to the arbitrators, substantially in compliance with the terms of the statute, the award by the arbitrators can be sustained so far as the oath is concerned. The testimony greatly preponderates to the effect that the proper oath was read by the notary from the statute when administered. The evidence

of the notary is so conflicting that his final conclusions that both oaths were the same in terms does not convince us that such was the fact. Correctness and regularity in official acts are presumed. To hold that the oath was not correctly read would virtually be assuming irregularities in place of presuming regularities. None of the witnesses recollect the precise terms of the oath administered, which is not surprising in view of the lapse of nearly two years since it was administered. That the notary concludes at last that the written oath was the same as the oral one is not based upon any fact refreshing his memory, but seems to be a mere conclusion. The fact that the oath afterwards drawn up and signed was different of no consequence. The trial court found expressly that the arbitrators were duly sworn, and from the record we sustain such finding. The rule to be followed in considering the validity of awards is that all reasonable presumptions will be indulged to uphold their validity and give them effect. Morse, Arb. 411; *Wood* v. *Treleven,* 74 Wis. 580, 43 N. W. Rep. 488.

The remaining question to be considered relates to the allegation of the answer that the arbitrators did not consider the contract of employment between plaintiff and defendant while making up their award or at any other time. This is tantamount to alleging that they refused to consider evidence offered for consideration to them. In the answer defendant demands affirmative relief to the effect that the award be declared a nullity, for the reason that such evidence was not considered. Under statutes similar to ours, such answers have been upheld as stating defenses to actions brought upon awards. Such answers are not construed as allowing a review of the award upon the merits, but as tending to impeach it upon equitable considerations. The answer therefore states a defense. *Canfield* v. *Insurance Co.,* 55 Wis. 419, 13 N. W. Rep. 252; *Van Cortlandt* v. *Underhill,* 17 Johns. 405; *Day* v. *Hamomnd,* 57 N. Y. 479, 15 Am. Rep. 522. Upon a consideration of the evidence, however, we find no foundation, as a matter of fact, for such allegations of the answer. The evidence is distinct and pointed to the effect that the contract was before the arbitrators, and was considered by them. The award was found in favor of the plaintiff, after disallowing some of the plaintiff's claims. The award found in favor of the plaintiff was a balance found due and struck in his favor. Mr. Murphy testifies: Mr. McKinney was a witness for them [defendant], and, while he said there was a shortage in grades he couldn't furnish any tangible proof of it.  \*  \*  \* We had no way of knowing that the company had been any loser by the grades, so we didn't allow him [plaintiff] anything for overweights, and did not allow them any thing for under grades. We offset one against the other." Nothing can be clearer than this testimony to show that the contract was considered by the arbitrators in making the award. We are not determining whether they decided correctly or not. On the merits, their decision is final, so far as this

case is concerned. 2 Am. & Eng. Enc. Law (2d Ed.) p. 778; *Goddard* v. *King,* 40 Minn. 164, 41 N. W. Rep. 659. Submission of controversies to arbitrators for decision are favored as a speedy and inexpensive mode of adjusting differences, and every reasonable intendment will be made in favor of awards. 2 Am. & Eng. Enc. Law (2d Ed.) p. 766; *Wood Working Co.* v. *Schneider,* 119 N. Y. 475, 24 N. E. Rep. 4. As said in *Call* v. *Ballard,* 65 Wis. 188, 26 N. W. Rep. 548: "True, this is giving to the award a liberal construction; but such is the construction we are required to give." The award signed and filed by the arbitrators recites: "Whereas, the said Brooks Elevator Company and the said James Caldwell came before the said arbitrators, and submitted evidence in support of their respective claims, and said arbitrators having duly considered all of said evidence and allegations: Now, therefore, we * * * do find * * * that said Brooks Elevator Company is justly indebted to said James Caldwell on the matter of difference between said parties as set forth in the agreement for submission to arbitration," etc. There is total failure to show by the defendant that the arbitrators did not consider all the evidence before them respecting the matters in difference as submitted to them.

The judgment of the district court is affirmed. All concur.