*In re* MATTER OF ARBITRATION—(DEL BIANCO & ASSOCIATES, INC., Plaintiff-Appellee, *v.* SAM ADAM *et al.,* Defendants-Appellants.)

(No. 54370;

First District—June 15, 1972.

288

Westbrooks, Holman & E. F. Johnson, of Chicago, (Claude W. B. Holman, of counsel,) for appellants.

Benjamin Diadone, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff initiated this action before an arbitrator to recover damages under a written contract providing for arbitration of disputed matters.

Plaintiff, an architectural firm, had contracted with defendants, both of whom are attorneys, to perform architectural services in connection with the construction of an office building on land owned by defendants in the City of Chicago. Plaintiff claimed a breach of contract and sought arbitration. The arbitrator made an award in favor of plaintiff; the trial court allowed plaintiff's motion to confirm the award and entered judgment in favor of plaintiff, and defendants appeal. At this point, a review of the chronology of the proceedings is essential to fully understand the issues.

After plaintiff sought arbitration, defendants were given eight notices of proposed hearings in 1966. Despite receipt of these notices, defendants did not appear for any of the hearings. Finally, on February 1, 1967, the arbitrator conducted an *ex parte* hearing, took evidence and subsequently awarded plaintiff $7,981.38 including arbitration costs. Plaintiff filed suit to confirm the award and for judgment, and defendants moved to vacate or modify the award.

At the contested hearing to confirm the award, a court reporter testified that she had inaccurately transcribed one portion of the arbitration proceedings. She stated that, although the testimony indicated that a letter cancelling the contract had been sent by Nathaniel J. Reed on behalf of defendants, she had typed the name of Dan Mangaimele, Jr. The trial court found that the arbitrator may have been misled; vacated the award and remanded the cause to the same arbitrator. Defendants made no objection to that order.

Both sides were represented by counsel at the second arbitration hearing. The arbitrator sought to limit the hearing to that portion of the testimony which allegedly misled him in his first award. However defendants objected, and the arbitrator reheard the entire testimony. After the second hearing had begun, one of defendants' attorneys requested that the matter be heard by another arbitrator. When the arbitrator denied the request, counsel sent a telegram to the Arbitration Association requesting another arbitrator. The request was also denied.

After hearing the evidence, the arbitrator awarded $10,114.66 to plaintiff. Plaintiff again brought suit to confirm the award and the court, over defendants' objections, confirmed the award and entered judgment. On appeal, defendants contend that the court erred in not looking beyond "the four corners of the award" to determine its validity; that the arbitrator was prejudiced against defendants; that the arbitrator exceeded his powers; that the award was obtained by fraud, corruption and undue means; that, under the terms of the contract, the matter could not be arbitrated; that plaintiff failed to give defendants a notice of its intention to arbitrate; and that the award was a nullity.

On June 29, 1965, the parties entered into a written contract by which plaintiff was to draft the plans for the construction of the building and perform the other functions of an architect. Article 3 of the contract described the basic services to be performed by plaintiff and provided that plaintiff was to receive six percent of the cost of construction. The contract also provided as follows:

"Arbitration of all questions in dispute under this Agreement shall be at the choice of either party and shall be in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of The American Institute of Architects. This Agreement shall be specifically enforceable under the prevailing arbitration law and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. The decisions of the arbitrators shall be a condition precedent to the right of any legal action."

The following pertinent evidence was adduced at the second arbitration hearing.

Robert Schwartz, plaintiff's vice-president, testified that plaintiff had received a retainer of $1000 from defendants on the contract. The proposed office building was to be two stories, contain ten offices and have an elevator. Schwartz identified a survey plot, drawings, sketches, photographs and blueprints of the site and proposed building. Building plans had been drawn under Schwartz' supervision by J. P. Donovan and Associates at a cost of $1,181.78. Plans had been blueprinted for $198.37. Schwartz also testified that there was no cost limitation on the contract, and that plaintiff was to receive the standard six percent of the cost of construction for its basic services. Universal Builders was to be the general contractor on the job, and Schwartz understood that there was a written contract between Universal and defendants. Albert Danielson, plaintiff's office manager, testified that plaintiff had paid $2203 in wages on the project, and that Schwartz had performed 94 hours of work on the contract.

Lee Turoff, president of Universal Builders, testified for plaintiff that Universal was to be general contractor for the building and that the costs of construction were to be $237,000. (Defendants note that at the first hearing, he testified that the costs would be $226,000.) Daniel Mangaimele, an attorney, testified for plaintiff that it was he who introduced the parties to each other. At the time, the witness was a law student; he never was defendants' agent, but worked for Turoff and was promised $200 if the deal went through.

Nathaniel J. Reed, Jr., an attorney, testified for the plaintiff that he had been counsel for defendants. As counsel, Reed wrote the letter

cancelling the contract. The witness identified the letter, acknowledged his signature and stated that he had mailed it. Reed declined to further testify urging that the attorney-client relationship with defendants barred further comment. Counsel for plaintiff read the letter into evidence without objection by defendants. The letter further advised the plaintiff that the defendants considered the $1000 already paid as full payment for their obligation. The letter indicated that a carbon copy was mailed to the defendants.

John Macsai, an architect, testified as an expert witness for plaintiff that the usual and customary fee for architectural services would be no less than six percent of the construction costs. If the architect provided plans and specifications, but performance of the contract was not rendered, then the usual customary credit given to the owner for the construction supervision phase of the contract would be twenty-five to thirty percent. Macsai testified to an alternative method of figuring an architect's compensation other than by charging a certain percentage of the total construction costs. Under that formula, the architect would charge 2½ times the amount of direct salary expenses, would add what it was obligated to pay for mechanical and structural engineering drawing expenses plus a ten to fifteen percent profit, and add the cost of blueprints. According to Macsai, where the plaintiff received the down payment and became obligated to pay the salaries, fees for mechanical and structural engineering services, and the cost of blueprinting, all in reliance on the contract, the total sum of $8985 would be due the plaintiff for its services.

Counsel for plaintiff pointed out that, based on Turoff's testimony, and following the six percent formula, the amount due was $9371; based on the testimony of Macsai, plaintiff was entitled to $8985. Counsel also submitted the arbitration costs at $1,129.66.

R. Eugene Pincham, one of the defendants, testified at the arbitration hearing that Adam and he purchased the site in question and planned to erect an office building. They met with plaintiff, and all parties agreed that defendants would pay plaintiff $1000 to draw plans for the job. It was further agreed that defendants would pay an additional fee of six percent of the total costs only if the building were completed. Pincham testified that he had never met or talked with Reed, and that neither he nor Adam had cancelled the contract, nor had they authorized anyone to cancel the contract in their behalf.

■■ Defendants first argue that the trial court erred in failing to "look beyond the four corners of the award" and making its own determination of the case. We note initially that this contention is based upon a remark made by plaintiff's counsel to the trial judge, and overlooks what trans-

pired in the trial court. At the hearing on the motion to confirm the second award, the following colloquy took place:

"THE COURT: What you are saying is that this award was obtained by fraudulent and corrupt means, and I will hear evidence on it.

\* \* \*

DEFENSE COUNSEL: I have no verbal evidence.

THE COURT: You say it is in the transcript?

DEFENSE COUNSEL: Right. This is all I can ever say. \* \* \*

THE COURT: Well, are you willing to submit this whole thing to me on the transcript, or do you intend to present some evidence to this Court to support the allegations you make?

\* \* \*

THE COURT: \* \* \* you apparently made no objection to Mr. Naslund initially or in the order directing, sending it back to him to re-enter the case.

\* \* \*

Mr. Holman, you go ahead and argue, say anything you want based on that record, and I will read the record. I say to you again, are you willing to submit this case to me on the transcript of the hearings before the Arbitrator?

DEFENSE COUNSEL: Yes, and with one witness and by oral argument."

Thereafter, defendant Adam testified that he was an attorney, and that he knew Reed. Adam stated that he did not direct Reed to write the letter cancelling the contract, but subsequently had seen the letter after it was written. A reading of the above colloquy reveals clearly that the trial court did not restrict itself to a reading of the four corners of the award, but rather that it examined the entire record made before the arbitrator, and also heard the only witness presented by defendants.

■■ Moreover, the Illinois Uniform Arbitration Act, Ill. Rev. Stat. 1967, ch. 10, par. 101 provides:

"A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract."

The Act, Ill. Rev. Stat. 1967, ch. 10, par. 112, further provides in part that on review the court should vacate an award only when:

"(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a

neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party;

\* \* \*

(4) The arbitrators \* \* \* so conducted the hearing \* \* \* as to prejudice substantially the rights of a party; \* \* \*."

Where the award conforms to the agreement to arbitrate, and in the absence of fraud, the court on review will not set aside the award for errors of law or mistake in the findings of fact by the arbitrator. *Ramonas v. Kerelis,* 102 Ill.App.2d 262, 243 N.E.2d 711.

■■ We now consider defendants' contention that the arbitrator was prejudiced against them. In making this argument, defendants rely primarily on certain comments made by the arbitrator during the hearing. One of defendants' attorneys was urging the arbitrator to rehear all of the testimony rather than that portion which allegedly had misled his first decision, when the following dialog occurred:

"ARBITRATOR: I am terribly impressed by Mr. Holman's command of the English language, his ability to state a position for his client. But I am also sufficiently endowed with knowledge in this area that some of it is spent.

COUNSEL: I don't know what you mean by "spent," Judge. If you mean that you are not paying any attention to what I say, then you ought to refer it to another Arbitrator.

ARBITRATOR: No. No. I am paying attention. But some of the slantings are—

\* \* \*

COUNSEL: Well, I object to an arbitrator hearing a case who starts out by saying that I am slanting the case.

ARBITRATOR: No.

COUNSEL: That is impugning my integrity. I am not slanting the case.

\* \* \*

If—of course, if the Arbitrator says I am slanting my case, I don't know how I can get a fair trial. I raise the point that these defendants cannot possibly get a fair trial before an Arbitrator who says that I, when I am reading from a document a copy of which I filed in the court, that I am slanting it to my client.

ARBITRATOR: Mr. Holman, that is not the case. I did not realize that you were reading from a typed presentation. I didn't have it before me. My interpretation was incorrect. I freely admit it.

\* \* \*

I don't think there is any question of your slanting at all. You are

representing your clients. Now I chose an ill phrase, and I apologize for it."

In our view, the comments of the arbitrator did not indicate that he was prejudiced against defendants. The arbitrator conceded that he had chosen an unfortunate phrase and apologized for it. The trial court properly held that the record did not reveal that the arbitrator was prejudiced against defendants.

● 4 Defendants also argue that in making the award the arbitrator exceeded the powers granted to him by the arbitration clause of the contract. The contract provided for arbitration of "all questions in dispute under this Agreement." All questions presented to the arbitrator were ones which arose under the contract. Therefore, the amount of compensation due to plaintiff was a proper subject for determination by the arbitrator.

■■ Defendants next maintain that the award was obtained by fraud, corruption and undue means. While fraud, corruption or other undue means constitute grounds for vacating an award, (Ill. Rev. Stat. 1967, ch. 10, par. 112(1)), allegations of mistake of fact and law do not prove fraud. In *Root v. Renwick*, 15 Ill. 461, 463-464, the court said:

"Again, the proofs must pursue the allegations, which are fraud and corruption. [Citations omitted.] Plaintiff cannot, under these allegations, show mere error of judgment in law, mistake of fact, or in the amount allowed or refused in the award."

Defendants have not offered any extrinsic evidence of fraud, but base their contention on a number of the arbitrator's holdings. We find no evidence of fraud or corruption in any of the arbitrator's holdings, and will comment only on several of the rulings alluded to by defendants.

■■ Defendants urge as proof of fraud the report of proceedings of the first arbitration hearing in which Dan Mangaimele, Jr. rather than Nathaniel Reed was identified as the attorney who had written the letter of cancellation on behalf of defendants. At the hearing on the motion to vacate the first award, the court reporter gave an uncontradicted explanation of how that occurred and we do not believe, as defendants claim, that the incident evidenced fraud on the part of the arbitrator or counsel for plaintiff.

■■ Under the same heading, defendants maintain that the arbitrator's determination that Reed was their agent evidences fraud. We believe, however, that under the facts and circumstances, the finding had a basis in the record, and that certainly, such a holding was not an indication of fraud or corruption.

■■ The record reveals that the letter written by Reed in plain and simple language cancelled the contract. The letter itself was read into

the record without objection by the defendants. The face of the letter indicates that a copy was forwarded to the defendants. Reed testified that he was acting as the attorney in a representative capacity for the defendants at the time. The failure to repudiate the cancellation under these circumstances justified the finding of the agency relationship. Mechem, The Law of Agency, Book 1, § 453.

■■■ Defendants also argue that fraud on the part of the arbitrator is revealed in the amount of damages awarded to plaintiff. They contend that the allowance of a larger award at the second hearing constituted fraud. However, in assessing damages, the arbitrator accepted the formula presented by plaintiff's expert witness, and we find no impropriety or indication of wrongdoing in that decision. Macsai testified that $8985 was due plaintiff on the contract, and the arbitration costs were found to be $1,129.66, a total of $10,114.66, the amount of the award. Moreover, in *Root v. Renwick*, 15 Ill. 461, the court said at p. 464: "A mere allowance of too little, or excessive damages, will not raise a presumption of fraud of itself." The trial court correctly found that the award was not the result of fraud, corruption or undue means.

■■ We find no merit in defendants' next contention that the arbitration agreement terminated because the arbitration was conducted by an arbitrator from the Arbitration Association, while the contract provided that it was to be conducted by an arbitrator of the American Institute of Architects. As the trial judge aptly noted, defendants interposed no objection to the matter being assigned to the arbitrator from the Arbitration Association at the time of the vacatur of the first award, and cannot now complain.

■■ For the same reasons, defendant's argument that the award should be vacated because plaintiff did not give them notice of its intention to arbitrate also must fail. The purpose of notice is to inform the opponent of the fact that the movant intends to ask for a determination of the dispute existing between them. Notice also informs the opponent of the nature of the dispute from which the party giving notice is asking relief. (Domke on Commercial Arbitration, § 14.01.) Defendants were present in the trial court when the first award was vacated and the cause remanded for another hearing before the arbitrator. Defendants, through counsel, participated fully in the second hearing, and obviously were fully informed as to the nature, scope and extent of the dispute. They cannot show prejudice by any failure of notice.

Defendants finally urge that the second award is a nullity at law because it was rendered by the arbitrator in the form of a letter to the American Arbitration Association. The award recited the parties to the proceedings, the finding of the arbitrator, the amount of damages, and

bore the arbitrator's signature. The award further recited that the arbitrator would furnish at a later date the basis of his decision. No further letter was ever sent.

■■ The recitations in the letter constituted a sufficient statement of the award, nor is it defective because it did not contain a statement of the reasons for the decision. Domke, *supra*, § 29.06, states as follows:

"Arbitrators are not required to state the reasons for their award, and commercial arbitration awards, unlike labor awards, are rarely accompanied by written opinions. The policy underlying this practice seems sound. The parties expect to have their controversy settled with speed and finality."

In *Podolsky v. Raskin*, 294 Ill. 443, 454, the court said:

"It was not necessary for the award to be clothed in technical language or to state each matter considered or that the evidence be set out to show how the arbitrators reached their conclusions of law or fact. A simple announcement of the result of their investigation and deliberation is all the law requires."

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON, P. J., and DEMPSEY, J., concur.