**NELSON PAVING CO., INC., Respondent,**

v.

**Walter R. HJELLE, State Highway Commissioner of the State of North Dakota, Appellant.**

Civ. No. 8861.

Supreme Court of North Dakota.

April 12, 1973.

Rehearing Denied May 11, 1973.

Jos. A. Vogel, Jr., and David K. O. Leer, Sp. Asst. Attys. Gen., Bismarck, for appellant.

Mitchell Mahoney for Pringle & Herigstad, Minot, and McIntee & Whisenand, Williston, for respondent.

ERICKSTAD, Judge.

This is an appeal from a judgment entered upon an arbitration award for Nelson Paving Co., Inc., in the sum of $186,660.69, and from an order denying a motion to vacate that award. It is a sequel to Hjelle v. Sornsin Construction Company, 173 N.W. 2d 431 (N.D.1969), wherein this court held that Nelson Paving, as a subcontractor in a State highway construction contract, was entitled to have its claim against the State and the prime contractor determined by arbitration.

By way of background we quote from that case.

"On April 11, 1966, the Prime Contractor was awarded certain highway construction contracts, mainly for the grading and application of aggregate base to certain parts of U. S. Highway 83 situated in Bottineau, Renville, and Ward Counties. On April 20, 1966, the Commissioner approved the Prime Contractor's request to sublet certain items of the contract to the Subcontractor.

On February 1, 1968, the Subcontractor served the Commissioner and the Prime Contractor with a 'petition for arbitration,' naming the Commissioner and the Prime Contractor as respondents. By complaint dated February 8, 1968, the Commissioner initiated a declaratory judgment action whereby he sought (1) to have N.D.C.C. §§ 24–02–26 through 24–02–33 declared unconstitutional and void, and (2) if the sections were found to be constitutional, to have the court award a judgment declaring that the Subcontractor could not assert any claims against the Commissioner.

"The Subcontractor filed an answer and counterclaim, denying the contentions of the Commissioner and asserting that if the Court did determine that the arbitration statutes were unconstitutional and void or that they were not applicable to the claims of the Subcontractor, the Subcontractor was entitled to a judgment against the Commissioner of $497,660.80, the amount being the same that it asserted it was entitled to in its petition for arbitration.

"The Prime Contractor denied that the provisions of N.D.C.C. ch. 24–02 were unconstitutional, asserted that the petition of the Subcontractor was fatally defective in that it did not comply with the applicable provisions of ch. 24–02, and asserted that to the extent the claims set forth in the petition for arbitration were not frivolous and greatly exaggerated, they could properly be the subject of arbitration between the Commissioner and the Prime Contractor acting on behalf of the Subcontractor.

"At the same time the Subcontractor filed its cross-claim, asking that a declaratory judgment be entered, declaring that the arbitration statutes (§§ 24–02–26 through 24–02–33) are valid and constitutional and apply to the claims of the Subcontractor as set forth in its petition for arbitration, and asking that a board of arbitration be established, pursuant to

§ 24–02–26, with the Subcontractor being entitled to one arbiter and the Commissioner and the Prime Contractor together being entitled to one arbiter, a third arbiter to be chosen by the other two. It further asks that if the Court determines that the arbitration statutes are unconstitutional and void or that they are not applicable to the claim of the Subcontractor as set forth in its petition, a judgment must be given the Subcontractor against the Commissioner for $497,660.80.

"The Prime Contractor filed an answer to the cross-claim, asserting that it had fully performed all of its undertakings and obligations under its contract with the Commissioner and under the subcontract with the Subcontractor; and, pertinent among many other allegations, it asserted that the Subcontractor did not have any right to invoke arbitration against the Prime Contractor, but that the Prime Contractor, on behalf of the Subcontractor, was fully prepared and willing to submit to arbitration under ch. 24–02 any claim that the Subcontractor made in good faith against the Commissioner, providing a sufficient surety was obtained.

"It was stipulated that the counterclaim and cross-claim of the Subcontractor should be held in abeyance until final disposition of the issues raised in the declaratory judgment action." Hjelle v. Sornsin Construction Company, 173 N. W.2d 431 at 433 (1969).

In *Hjelle* we held that the arbitration statutes in Chapter 24–02, N.D.C.C., are constitutional and apply to controversies between a subcontractor, a prime contractor, and the commissioner. Hjelle v. Sornsin, *supra,* Syllabus ¶ 2 and 6.

In submitting to arbitration following remand of the case, the parties stipulated in part as follows:

" * * * the undersigned, Nelson Paving Co., Inc., and Walter R. Hjelle,

State Highway Commissioner of the State of North Dakota, do hereby mutually covenant and agree, to and with each other to submit all causes of action, controversies, differences, claims, demands and matters whatsoever, now pending, existing, held by and between us relating to or growing out of the said Highway 83 construction project, and the performance thereunder, to Harry Pippin of Williston, North Dakota, Robert Vogel of Mandan, North Dakota, and Peter J. Johnson of Virginia, Minnesota, as arbitrators, who, or any two of whom, shall arbitrate, award, order, adjudge and determine any and all controversies, differences, claims, demands and matters whatsoever now pending, existing, held by and between us relating to or growing out of the said Highway 83 construction project, and the performance thereunder.

\*   \*   \*   \*   \*   \*

"At the conclusion of the hearings the arbitrators shall prepare Findings of Fact and Conclusions of Law on all factual or legal issues that are raised by the parties. If any one arbitrator shall dissent from such Findings or Conclusions, he shall prepare a memorandum thereof.

\*   \*   \*   \*   \*   \*

"It is agreed that a judgment may be entered in the District Court of Ward County upon any award given by the arbitrators in these proceedings in accordance with Section 24-02-28, N.D.C.C.

"In submitting the above matter to arbitration, the parties intend, regardless of any inadvertent contrary expression herein, to conform to the statutory provisions for arbitration set forth in Sections 24-02-26 through 24-02-33 of the North Dakota Century Code, and Chapter 32-29 of the North Dakota Century Code and the general rules of law regarding arbitration proceedings."

Prior to the commencement of the arbitration hearing the commissioner moved that the arbitrators dismiss the proceedings for the reasons that the amended petition for arbitration alleged a claim for relief which could not be granted and that the commissioner as a matter of law could not vary the terms of the contract.

The motion was denied and the controversy was heard by the arbitration board. Mr. Pippin and Mr. Johnson, constituting a majority of the board, concluded that Nelson Paving was entitled to an award of $146,313.75. They also awarded interest of four per cent per annum from and after August 11, 1967.

Mr. Vogel filed a dissenting opinion.

When Nelson Paving moved in Ward County District Court that the court affirm the award and direct entry of judgment, the commissioner moved to vacate the award. The court denied the commissioner's motion and subsequently denied a motion for relief from the order denying the motion to vacate the award. The court granted Nelson Paving's motion.

The appeal is in two parts, the first being an appeal from the judgment entered upon the arbitration award, and the second being an appeal from the order denying the motion to vacate the arbitration award.

■ After reviewing the relevant statutes and other authorities, we conclude that the order denying the motion to vacate the award is an intermediate order which is not appealable, but which is reviewable on the appeal from the judgment entered upon the award. Since the appeal from the judgment has been perfected, we may review the order denying the motion to vacate the award at this time.

Under the arbitration statutes a motion may be made by any party to the submission to affirm the award. The court must grant the motion unless the award is (a) vacated or (b) modified or corrected. Any party may make a motion (a) to vacate an award under Section 32-29-08, N.D.C.C., or (b) to modify or correct an award under Section 32-29-09, N.D.C.C. Upon the

granting of a motion to affirm, modify, or correct an award, judgment is to be entered in accordance therewith. Section 32–29–11, N.D.C.C.

Section 32–29–13, N.D.C.C., provides that a judgment entered upon an arbitration award has the same force and effect as a judgment entered in other cases and may be reviewed in like manner by the supreme court on appeal.

"32–29–13. Subject to same provisions as other judgments.—The judgment roll upon an award shall be filed and the judgment docketed as in other cases, and shall have the same force and effect in all respects, and shall be subject to all the provisions of law in relation to judgments in actions, and may be reviewed in like manner by the supreme court on appeal. Execution shall issue thereon against the property of any party against whom a recovery shall be had in all respects as upon other judgments." N.D.C.C.

Pertinent also is that part of Section 32–29–14, N.D.C.C., which provides that upon appeal "the supreme court shall reverse, modify, amend, or affirm such judgment according to justice."

What does this mean in light of the restrictive language contained in Sections 32–29–08 and 32–29–09, N.D.C.C., circumscribing the instances when a motion to vacate or a motion to modify may be granted?

"32–29–08. Motion to vacate award of arbitrators—Grounds.—Any party to such submission may move the court designated therein to vacate the award upon any of the following grounds:

"1. That such award was procured by corruption, fraud, or other undue means;

"2. That there was evident partiality or corruption in the arbitrators, or either of them;

"3. That the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or refusing to hear any evidence pertinent and material to the controversy, or for any other misbehavior of such arbitrators by which the rights of any party shall have been prejudiced; or

"4. That the arbitrators exceeded their powers, or that they so imperfectly executed them, that a mutual, final, and definite award on the subject matter submitted was not made."

"32–29–09. Motion to modify award of arbitrators—Grounds.—Any party to a submission also may move the court designated therein to modify or correct an award in the following cases:

"1. When there is evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in such award;

"2. When the arbitrators shall have awarded upon some matter not submitted to them, not affecting the merits of the decision upon the matters submitted; or

"3. When the award shall be imperfect in some matter of form not affecting the merits of the controversy, and when, if it had been a verdict, such defect could have been amended or disregarded by the court according to the provisions of law."

N.D.C.C.

There is very little case law in North Dakota on the construction to be given these statutes. In Caldwell v. Brooks Elevator Co., 10 N.D. 575, 88 N.W. 700, 702 (1901), after reviewing the evidence presented on the question of whether the arbitrators refused to consider certain evidence, and finding that the evidence was considered in making the award, the court said:

"We are not determining whether they decided correctly or not. On the merits,

their decision is final, so far as this case is concerned. [Citations omitted.] Submissions of controversies to arbitrators for decision are favored as a speedy and inexpensive mode of adjusting differences, and every reasonable intendment will be made in favor of awards. [Citations omitted.]"

In Johnsen v. Wineman, 34 N.D. 116, 157 N.W. 679, 682 (1916), where the parties voluntarily submitted to arbitration, our court quoted with approval from 2 R. C.L. 386, as follows:

" 'Their decision on matters of fact and law is conclusive, and all matters in the award are thenceforth res judicata, on the theory that the matter has been adjudged by a tribunal which the parties have agreed to make final, a tribunal of last resort for that controversy'—citing numerous cases."

In the present case, the parties, under the compulsion of our remand, entered into the stipulation earlier referred to herein. Under that stipulation the arbitrators were authorized to determine all claims between the parties in conformance with the provisions of Sections 24–02–26 through 24–02–33, Chapter 32–29, N.D.C.C., and general rules of law governing arbitration proceedings.

■ We believe that our review of the judgment in this case is limited to the matters which may be considered on the motion to vacate.

This is in conformity with the practice in jurisdictions which have similar arbitration statutes.

By statute in Wisconsin, "An appeal may be taken from an order confirming, modifying, correcting or vacating an award, or from a judgment entered upon an award, as from an order or judgment in an action." W.S.A. 298.15. The grounds for vacating an award are identical to those contained in Section 32–29–08, N.D.C.C.

In Standard Const. Co., Inc. v. Hoeschler, 245 Wis. 316, 14 N.W.2d 12, 14 (1944), the supreme court of Wisconsin, in reversing a lower court order modifying an award, said:

"The most that can be contended is that the arbitrators made an error of fact or law in awarding interest to the contractor in view of the contract and surrounding circumstances. But this is not a ground for vacating or modifying the award. It was said in Travelers' Ins. Co. v. Pierce Engine Co., 141 Wis. 103, 123 N.W. 643, 645:

" 'There is no allegation in the answer, and no proof offered, that the arbitrator was guilty of any fraudulent or arbitrary action or fell into mistake in any other sense than that it is claimed he decided erroneously as to certain contentions urged by defendant. But such a submission to arbitration as we have determined this to be confers just that jurisdiction to decide erroneously, if honestly, and to bind the parties to such determination by force of their agreement to be so bound. * * *'

"We are of the view, therefore, that the trial court had no jurisdiction to upset this award. As said in Putterman v. Schmidt, 209 Wis. 442, 245 N.W. 78, 81: 'And that there was no such mistake as will upset an award is also clear. Mistakes of judgment, mistakes of either fact or law, are not ground for review of or setting aside an award. 2 Ruling Case Law, 292. "Such errors are among the contingencies which parties assume when they select such tribunals." 5 Corpus Juris 179. The mistakes that will void an award are those appearing on its face or gross mistakes of the arbitrators extraneously appearing as to their powers or duties, which result in real injustice or constructive fraud. 2 Ruling Case Law, 392. The mistake must so mislead the arbitrators that they did not apply the rules which they intended to apply, "so that upon their own theory a

mistake was made which has caused the result to be something different from that which they had reached by their reason and judgment." *5 Corpus Juris* 180. The record here does not disclose any such mistake.' "

The pertinent Washington statute on appeal reads: "An appeal may be taken from any final order made in a proceeding under this chapter, or from a judgment entered upon an award, as from an order or judgment in any civil action." R.C.W. § 7.04.220.

The Washington grounds for vacating an award are identical to those in Section 32–29–08, N.D.C.C., with the inclusion of one further ground: "(5) If there was no valid submission or arbitration agreement and the proceeding was instituted without either serving a notice of intention to arbitrate, as provided in R.C.W. 7.04.060, or without serving a motion to compel arbitration, as provided in R.C.W. § 7.04.040 (1)."

The Washington court discussed its arbitration statutes in St. Paul Insurance Companies v. Lusis, 6 Wash.App. 205, 492 P.2d 575, 577 (1971):

"In considering an application to vacate an arbitration award it is the function of the trial court to ascertain whether or not *statutory* grounds exist to vacate the award. In this state, arbitration proceedings are wholly statutory, and the rights of the parties thereto are governed and controlled by statutory provisions. [Citation omitted.] The parties to an arbitation agreement may surround *themselves with such procedural safe-*guards as they deem necessary and define the powers of the arbitrator, but violation of any such conditions need not necessarily coincide with a statutory ground for vacation of an award. Thus, our review is limited to whether or not there was a violation of any of the statutory provisions regulating the vacation of awards."

In a footnote the court said that any award which violates the basic law of the State could not be enforced.

Applying this rule the Washington Court of Appeals affirmed the trial court's refusal to grant an application to vacate an arbitration award.

The California statute authorizing an appeal from an arbitration award reads:

"The appeal shall be taken in the same manner as an appeal from an order or judgment in a civil action. Upon an appeal from any order or judgment under this title, the court may review the decision and any intermediate ruling, proceeding, order or décision which involves the merits or necessarily affects the order or judgment appealed from, or which substantially affects the rights of a party. The court may also on such appeal review any order on motion for a new trial. The respondent on the appeal, a party in whose favor the judgment or order was given may, without appealing from such judgment, request the court to and it may review any of the foregoing matters for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment or order from which the appeal is taken. The provisions of this section do not authorize the court to review any decision or order from which an appeal might have been taken." West's Ann.C.C.P. § 1294.2.

Grounds for vacation of an award in California are also similar to those of Section 32–29–08, N.D.C.C. On appeal from a judgment confirming an award, the court in Canadian Indemnity Company v. Ohm, 271 Cal.App.2d 703, 707, 76 Cal.Rptr. 902, 904 (1969), affirming the judgment, said:

"Voluntary arbitration proceedings are favored by the courts and all that is necessary to support an award is substantial compliance with the applicable statute. Both the superior and appellate courts

must give every intendment of validity to the award and neither the merits of the dispute nor the sufficiency of the evidence are reviewable by either a trial or an appellate court. It is presumed all issues in the dispute were heard and decided by the arbitrators. [Citation omitted.]"

The California court concluded by quoting from previous California decisions:

" 'The parties to an arbitration provision agree that they will be bound by the decision of the arbitrators on the matters submitted for arbitration whether that decision determines disputed questions of law or fact, and whether it is right or wrong.'

\* \* \* \* \* \*

" 'Parties who agree to arbitration may expect not only to reap the advantages that flow from the use of that nontechnical, summary procedure, but also to find themselves bound by an award reached by paths neither marked nor traceable and not subject to judicial review.' " Canadian Indemnity Company v. Ohm, *supra*, 76 Cal.Rptr. 902, 906.

Grounds for vacating an award in New York are as follows:

"1. The award shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by:

"(i) corruption, fraud or misconduct in procuring the award; or

"(ii) partiality of an arbitrator appointed as a neutral, except where the award was by confession; or

"(iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or

"(iv) failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection.

"2. The award shall be vacated on the application of a party who neither participated in the arbitration nor was served with a notice of intention to arbitrate if the court finds that:

"(i) the rights of that party were prejudiced by one of the grounds specified in paragraph one; or

"(ii) a valid agreement to arbitrate was not made; or

"(iii) the agreement to arbitrate had not been complied with; or

"(iv) the arbitrated claim was barred by limitation under subdivision (b) of section 7502." N.Y. CPLR § 7511 (McKinney 1963).

In New York the rule is that "an award will not be set aside even '[i]f it appear upon [its] face \* \* \* that the arbitrators intended to decide the case according to the law, and the grounds for their decision are set out, which in law do not justify it' ". In Re Schine Enterprises, Inc., 26 N.Y.2d 799, 309 N.Y.S.2d 222, 223, 257 N.E.2d 665, 666 (1970). In *Schine* the Court of Appeals of New York, in a memorandum decision, affirmed an order confirming an award.

The New York Supreme Court, Appellate Division, in reversing and denying a motion to vacate and granting a cross-motion to confirm an award, said:

"The statute [Civil Practice Law and Rules, § 7511] \* \* \* prescribes the bases on which an award may be vacated and none of them empowers the court to review the determination, as such, of the arbitrator. Indeed, once referred to him, all questions of fact and law are within the judicially unreviewable purview of the arbitrator [citations omitted]." In

Re S & W Fine Foods, Inc., 8 A.D.2d 130, 185 N.Y.S.2d 1021, 1022 (1959).

An order affirming an award was affirmed by the Court of Appeals of New York in Lentine v. Fundaro, 29 N.Y.2d 382, 328 N.Y.S.2d 418, 278 N.E.2d 633, 634 (1972), the court stating:

"Save for 'complete irrationality', arbitrators are free to fashion the applicable rules and determine the facts of a dispute before them without their award being subject to judicial revision."

Sections 658–14 and 658–15 of the Hawaii Revised Statutes are as follows:

"The judgment so entered [upon an arbitration award] has the same force and effect, in all respects as, and is subject to all the provisions of law relating to, a judgment in an action; and it may be enforced, as if it had been rendered in an action in the court in which it is entered." HRS § 658–14.

"Unless the agreement for award provides that no appeal may be taken an appeal may be taken from an order vacating an award, or from a judgment entered upon an award, as from an order or judgment in an action, otherwise no appeal may be had." HRS 658–15.

Grounds for vacating an award, found in § 658–8 of the Hawaii Revised Statutes, are identical to those contained in Section 32–29–08, N.D.C.C. The scope of review on an appeal from a judgment entered upon an award was discussed in Mars Constructors, Inc. v. Tropical Enterprises, Ltd., 51 Haw. 332, 460 P.2d 317, 319 (1969). The supreme court affirmed the lower court judgment confirming an award and said:

"We reaffirm this holding because we believe an extensive judicial review of arbitration awards would frustrate the intent of the parties to avoid litigation and would also nullify the legislative objective in the enactment of the Arbitration and Awards statute.

"The parties have voluntarily agreed to arbitrate, and they thereby assumed all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law and in their findings of fact. * * * [T]his court [has] held that such mistakes of arbitrators did not vitiate awards and that the review of awards by the courts were limited by the provisions of the arbitration statute."

As of February, 1972, fourteen states had adopted the Uniform Arbitration Act as drafted by the National Conference of Commissioners on Uniform State Laws, which puts into statutory form the construction which the foregoing courts have placed on the arbitration statutes of their states. Uniform Arbitration Act (U.L.A.). That Act contains the following provision:

"* * * but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." Uniform Arbitration Act (U.L.A.) § 12.

Illinois has adopted the Uniform Arbitration Act and the language used in recent decisions from that State on appeals from awards is substantially identical to that used by courts of states which have not adopted the Act. In Ramonas v. Kerelis, 102 Ill.App.2d 262, 243 N.E.2d 711, 717 (1968), the court said:

"We do not believe the arbitrator exceeded his powers, nor that the award should be set aside. When the award of an arbitrator conforms with the submission, and no fraud or mistake appears on its face, the award will not be interfered with or set aside for errors of law or fact."

Affirming a lower court judgment confirming an award, the court stated:

"The limited nature of the grounds for vacation as provided in the current Section 12 is in accordance with the prior development of the law [citation omit-

ted] and reflective of the well recognized principle that courts should look with favor upon arbitration as a method of settling controversies." William v. Lucke, Inc. v. Spiegel, 131 Ill.App.2d 532, 266 N.E.2d 504, 507 (1970).

An award was also affirmed in Del Bianco's Associates, Inc. v. Adam, 6 Ill. App.3d 286, 285 N.E.2d 480, 484 (1972), where the court said:

"Where the award conforms to the agreement to arbitrate, and in the absence of fraud, the court on review will not set aside the award for errors of law or mistake in the findings of fact by the arbitrator."

In conformity with the decisions discussed herein construing arbitration statutes similar to our own, we conclude that our review of a judgment entered upon an arbitration award is strictly limited. We adopt the New York rule which is to the effect that save for complete irrationality, arbitrators are free to fashion the applicable rules and determine the facts of a dispute before them without their award being subject to judicial revision. When a motion to vacate an arbitration award is made under subsection 4 of Section 32–29–08, N.D.C.C., the award will not be set aside unless it is completely irrational.

Let us review the contentions of the commissioner in light of this test.

He contends that "the arbitrators exceeded their powers" and that this is reviewable under subsection 4 of Section 32–29–08, N.D.C.C.

He asserts that the powers of the arbitration board are not so final that judicial approval should be given to an award based upon findings and conclusions that are in violation of Section 22 of the North Dakota State Constitution and Section 32–12–02, N.D.C.C. Those sections read:

"All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay. Suits may be brought against the state in such manner, in such courts, and in such cases as the legislative assembly may, by law, direct." Section 22, Constitution of North Dakota.

"An action respecting the title to property, or arising upon contract, may be brought in the district court against the state the same as against a private person. * * *" Section 32–12–02, N.D. C.C.

In *Hjelle* we recognized that no contract was entered into between Nelson Paving, Inc. and the commissioner, but concluded that because a contract had been entered into between Nelson Paving, Inc. and the prime contractor, Nelson Paving, Inc. comes within the statutory phrase "any person who voluntarily enters into a contract for the construction or repair of highways," found in Section 24–02–26, N. D.C.C.

Accordingly, the arbitration hearing was authorized by the Legislature through that statute and is not in violation of Section 22 of the Constitution of North Dakota.

Section 32–12–02, N.D.C.C., has no relevancy in this case. That statute authorizes actions against the State respecting title to property and claims arising under contract.

Section 24–02–26, N.D.C.C., requires arbitration of highway construction contract disputes.

"24–02–26. Controversies to be arbitrated—Arbitrators—How named.—All controversies arising out of any contract for the construction or repair of highways entered into by the commissioner shall be submitted to arbitration as provided in this chapter, if the parties cannot agree. Any person who voluntarily enters into a contract for the construction or repair of highways shall be con-

sidered as having agreed to arbitration of all controversies arising out of such contract. Three persons shall compose the arbitration board, one of whom shall be appointed by each of the parties and the two thus appointed shall name a third." N.D.C.C.

These sections are not in conflict with each other.

Finding no violation of Section 22 of our State Constitution and no violation of Section 32–12–02 of our Code, there remains only the determination of whether the award upon which the judgment is based is completely irrational.

The core of the proceedings heard by the arbitrators concerned the responsibility to complete the subgrade in compliance with the North Dakota State Highway Department's *Standard Specifications for Road and Bridge Construction.* The following are the relevant sections of those specifications.

"230–2.2 Subgrade Preparation, Type II. The roadbed shall be brought to the elevation and cross section so that when the sub-grade is compacted it will conform to the lines, grades, and cross section shown on the plan. All soft and spongy material and other portions of the sub-grade which will not compact readily shall be removed as directed. Rocks larger than two inches, and all roots and other foreign matter brought to the surface shall be removed and disposed of satisfactorily. All holes or depressions made by the removal of materials as described above, shall be filled with approved material.

"230–2.2.1 The subgrade shall be given one complete coverage with a pneumatic tired roller with a tire inflation pressure and loading that will provide a minimum contact pressure of 90 p. s. i. Any defects in the subgrade shall be corrected by the Contractor in accordance with these specifications.

"230–2.2.2 The contractor shall protect and repair any damage to the subgrade from his own and public traffic. The sub-grade shall at all times be completed for a sufficient distance ahead of hauling and spreading base or surface material to allow adequate opportunity for inspection. No materials shall be placed on the sub-grade until it has been checked and approved by the Engineer.

"302–5.1 Subgrade Preparation. If not shown on the plans as a pay item, subgrade preparation will not be measured and will be considered incidental to aggregate base work. When shown as a pay item, measurement will be made in accordance with Section 230."

The pertinent provisions of the subcontract between Nelson Paving, Inc. and the prime contractor are as follows:

"The Subcontractor Agrees as Follows:

\* \* \* \* \* \*

"To furnish all materials, labor and equipment to satisfactorily place aggregate subbase and seal coat in accordance with Plans and Specifications as prepared by N. Dak. State Highway Dept.

\* \* \* \* \* \*

"The Subcontractor shall start his surfacing project at such time as directed by the Contractor so that the aggregate subbase will be completed within 5 days of the completion of the subgrade. The Subcontractor will be responsible for the maintenance of the completed subgrade as soon as he starts placing the base course or within 3 days of notice to proceed, whichever is less."

The commissioner contends that because subgrade preparation was not a pay item it was the responsibility of Nelson Paving, Inc. as incidental to aggregate base work under Section 302–5.1 of the *Standard Specifications;* that the function of the 90 p. s. i. proof roller is to detect soft spots, not to provide compaction; that the gravel trucks traveling on the subgrade were more effective in detecting soft spots than a 90 p. s. i. proof roller and it was there-

fore not necessary to require the 90 p. s. i. proof roller; and that Nelson Paving, Inc. would not have encountered the difficulties complained of had it had the necessary equipment in good operating condition and men who had the necessary experience to do the required work.

Nelson Paving, Inc. contends that it was the prime contractor's responsibility to complete the subgrade in compliance with Section 230 of the *Standard Specifications;* that it was the commissioner's duty to see that those specifications were complied with before approving the subgrade as ready for the aggregate base work; and that an adequate amount of properly functioning equipment was used on the project by men who had the necessary experience to do the work.

The opinion signed by Mr. Pippin and Mr. Johnson contains the following:

"We have concluded, based upon a careful examination of all the evidence, that Nelson is entitled to an award of money damages in this proceeding. This conclusion is based in large part upon our belief that the North Dakota State Highway Department did in fact owe a duty to Nelson to require the prime contractor to 90 psi proof test the subgrade and to repair and to continue to repair any soft spots detected until the subgrade successfully withstood the proof rolling called for in the plans and specifications. Only then would there be a 'completed' subgrade within the contractual terms."

The contract referred to is that between Nelson Paving, Inc. and the prime contractor.

Relative to the issue of responsibility for completing the subgrade, Mr. Joseph Kellogg, testifying as an expert witness, stated it was his opinion that the contractor bidding on the aggregate base course work would not have to do any subgrade work. He also testified that the correspondence between the parties indicated that the prime contractor assumed responsibility for completing the subgrade.

David Hilling, the vice-president of Nelson Paving, Inc. at that time, testified that it was his understanding that the subgrade was to be completed by the prime contractor according to the specifications.

The project engineer for the State Highway Department, Ray Bibow, testified that although the specifications require the subgrade to be covered by a 90 p. s. i. proof roller before material is placed on it, he approved the subgrade for gravel laydown knowing that the 90 p. s. i. proof roller requirement had not been complied with.

It was the testimony of Kellogg and Michael Wilkinson, another expert witness, that the primary cause of Nelson Paving, Inc.'s poor performance was the poor condition of the subgrade. Wilkinson testified as follows:

"Now, with a solid reliable sub-grade under it, we don't see why he couldn't have performed the contract in accordance with the time and cost control, or the time and cost of his estimate, and that the only reason that he was unable to do so was the condition that existed on the job. * * * We think that it was the conditions that existed that created the adverse effect on the time and cost control system, and that the 90 p. s. i. requirement, as far as we can tell, never was adhered to. It was a part of the specifications; because it would proof the sub-grade prior to the initiation of the work."

Clarence Bradley, a blade operator for 30 years and an employee of Nelson Paving, Inc. on this project, testified that he had never seen a subgrade like this one that had been approved for gravel laydown. Others who were associated with the project testified to the same effect.

Jerome F. Schriock, one of the owners of Schriock Construction Co., which company had also entered a bid for the aggregate base course work, testified that their

bid was only about $100 higher than that of Nelson Paving, Inc., and that they would not have anticipated using any more equipment than did Nelson Paving, Inc. William Schriock, also of Schriock Construction Co., in addition to testifying to the same effect, said that in his 20 years in the road-construction business he had never seen a subgrade like the one on this project.

From the foregoing and other testimony of experts on behalf of Nelson Paving, Mr. Pippin and Mr. Johnson determined the amount of damages suffered by Nelson Paving.

They found that the commissioner through his agent had changed the specifications by not requiring the prime contractor to 90 p. s. i. the subgrade before requiring the subcontractor to proceed to lay down the aggregate base, that the subcontractor was forced to do the repair work which the prime contractor would otherwise have had to do in properly preparing the subgrade, and that as a result the subcontractor was damaged to the extent of the award.

■ Reviewing the evidence in the light most favorable to the award, we cannot say that it is devoid of rationality. In so concluding, we do not substitute our view of the meaning of the highway department specifications which are embodied in the contract for those of the arbitrators. This is a highly technical field in which it is thought that the views of the technicians named to the arbitration board are to be preferred over the view of judges who have no specific training in this field.

If the results of arbitration in this field should indicate that this approach to the solution of disputes in this field is unsatisfactory, the Legislature may act to change or repeal the law. Time and experience will perhaps indicate the further course of legislation.

Before affirming the award, however, there is a final question raised by the commissioner that we must discuss.

■ The commissioner contends that it was error for the arbitrators to award interest on the award from August 11, 1967. In this regard all three arbitrators were in agreement. Mr. Robert Vogel stated in his dissenting opinion that he had "no disagreement with the majority as to their computation of damages. If any damages were due to the subcontractor from the State, then the amount of damages awarded by the majority is correct."

Mr. Pippin and Mr. Johnson concluded "that all sums of money awarded as damages were actually expended not later than August 11, 1967. The amount of those expenditures was clearly capable of being made certain by calculation * * *." Interest was therefore awarded pursuant to Sections 32–03–04 and 47–14–05, N.D.C.C., at the statutory rate of 4 per cent per annum from and after August 11, 1967.

The commissioner argues that the damages were not certain or capable of being made certain by calculation and that interest thereon should not be allowed prior to the entry of judgment. He refers us to two prior decisions of this court. Adamsen Construction Co. v. Altendorf, 152 N. W.2d 576 (N.D.1967); Braaten v. Grabinski, 77 N.D. 422, 43 N.W.2d 381 (1950).

*Adamsen* involved a claim for payment for labor and materials furnished in repairing a warehouse. There was a verbal contract between the parties for a specific amount which was to be paid upon the completion of the work. This court affirmed the lower court's decision holding the plaintiff entitled to recover the amount of the contract with interest from the date of completion of the work.

*Braaten* was an action to recover damages resulting from an automobile intersection accident. The trial court found that the plaintiff suffered damages in the sum of $350. In entering judgment for the plaintiff, the clerk added $59.66 in interest to the $350. This court affirmed the trial court's findings as to damages, but disallowed the interest. In so doing, it conclud-

ed that the damages sought to be recovered were not fixed or capable of being made certain by calculation and that accordingly interest prior to judgment was not permissible under Section 32–0304, N.D.R.C.1943, now Section 32–03–04, N.D.C.C. That statute reads:

"Interest on damages.—Every person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in him upon a particular day, also is entitled to recover interest thereon from that day, except for such time as the debtor is prevented by law or by the act of the creditor from paying the debt." N.D.C.C.

The court in *Braaten* seems also to have concluded that notwithstanding the provisions of Section 32–03–04, the trial court, acting as the trier of facts under Section 32–03–05, N.D.C.C., could have allowed interest within its discretion because the damages resulted from an obligation not arising from contract. Apparently, finding no abuse of discretion, this court affirmed the trial court and excluded interest from the judgment.

Section 32–03–05, N.D.C.C., reads:

"When interest in discretion of jury.—In an action for the breach of an obligation not arising from contract and in every case of oppression, fraud, or malice, interest may be given in the discretion of the jury."

Applying the irrationality test to the issue of interest as well as to the rest of the award, we conclude that the interest should not be stricken from the judgment.

Both the order denying the motion to vacate the arbitration award and the judgment are affirmed.

STRUTZ, C. J., and PAULSON and KNUDSON, JJ., concur.

TEIGEN, Judge (dissenting).

I dissent. This case is the sequel to Hjelle v. Sornsin Construction Company, 173 N.W.2d 431 (N.D.1969), in which the majority of this court (the writer dissenting) held that under the statutes providing for compulsory arbitration of a contract for construction or repair of highways entered into by the highway commissioner, a subcontractor may arbitrate its claims against the highway commissioner and the prime contractor but these claims must be asserted in separate proceedings. After the rendition of our opinion the subcontractor elected to assert its claim for arbitration against the highway commissioner and received an award for damages in the amount of $186,660.69 against the highway commissioner in a two-to-one decision by the three arbitrators. It is clear that a majority of the arbitrators made their decision not upon the subcontract but upon a conclusion, based upon their belief, that the highway commissioner owed a duty to the subcontractor to have required the prime contractor to proof test the subgrade to be graveled so as to insure a minimum contact pressure of 90 p. s. i. This was a legal conclusion based not upon the subcontractor's contract but upon the arbitrators' interpretation of the prime contractor's contract with the highway commissioner, and resulted in a finding of breach for which the prime contractor could have made no claim against the highway commissioner if it had not subcontracted the spreading of gravel upon the subgrade but had carried out this portion of the work itself.

It is therefore my opinion that the majority of the arbitrators have exceeded their powers in that they have premised their award upon an interpretation of the wrong contract and against a person who is not a party to the subcontract. Section 24–02–31, N.D.C.C., limits the jurisdiction of the arbitrators. It states, in part, as follows:

"The arbitrators shall determine all controversies between the parties growing out of the contract * * *"

The "contract" in this case is the subcontract and the parties are the subcontractor and the prime contractor.

The subcontractor had no contractual relationship with the highway commissioner and it is my opinion that any claims the subcontractor might have for extra costs because of its claim that the prime contractor had not compacted the subgrade according to specifications does not create a claim upon which the subcontractor may seek damages from the State Highway Commissioner. The board of arbitrators, in order to make its determination, had no power to determine the obligations or duties of the prime contractor to the highway commissioner or the highway commissioner's obligation or duties to the prime contractor. It is therefore my opinion that the district court erred when it denied the highway commissioner's motion to vacate the award on the ground that the arbitrators exceeded their powers, which is provided as a ground for the vacation of an award under Section 32–29–08(4), N.D.C. C.